STANDARD OIL CO. *v.* STATE OF MICHIGAN.

1. STATUTES—CONSTRUCTION OF TAX LAWS.

Generally tax laws are to be construed liberally in favor of the taxpayer, they are not to be extended beyond the clear import of their language and doubts therein are construed most strongly against the government.

2. TAXATION—COLLECTING OFFICERS.

Tax collecting officers must be able to point to express statutory authority for making tax exactions.

3. SAME—SALES—DISCOUNTS.

"Discounts," as that term is employed in section 1 of the general sales tax act, refers to discounts paid by the vendor to a bank or other discounting agency to have bills of exchange or promissory notes and other negotiable paper paid before maturity (Act No. 167, § 1, Pub. Acts 1933).

4. SAME—SALES—CASH DISCOUNTS.

Cash discounts, if taken by a customer, *held*, no part of gross proceeds of sale at retail under definition of "gross proceeds" contained in general sales tax act, hence are not taxable (Act No. 167, § 1, Pub. Acts 1933).

5. SAME—SALES—TRADE OR QUANTITY DISCOUNTS.

Trade or quantity discounts, based on agreements between retailer and customer entered into in advance of sale, which are off list price and vary according to quantity of merchandise purchased and customers do not contemplate refunds on purchase price, are no part of gross proceeds of sale at retail as those terms are defined in general sales tax act, hence are not taxable thereunder (Act No. 167, § 1, Pub. Acts 1933).

6. SAME—RETAIL SALES TAX ON TANGIBLE PERSONAL PROPERTY.

The State sales tax is a privilege tax, exacted for privilege of engaging in business of selling tangible personal property at retail within the State (Act No. 167, Pub. Acts 1933).

7. SAME—FEDERAL EXCISE AND STATE SALES TAXES ON SAME AR-
TICLES.

Both the Federal excise tax upon sale of gasoline and lubricating
oils and State sales tax attach the instant a sale thereof is
made to the consumer, hence neither is a part of the sale price,
the Federal tax being a fund payable by the manufacturer to
the Federal government when collected but which never does
become a part of manufacturer's gross proceeds of the sale
subject to State sales tax (47 Stat. at L. p. 259, 48 Stat. at
L. pp. 206, 764; Act No. 167, § 1, Pub. Acts 1933).

8. SAME—PAYMENT UNDER PROTEST—RECOVERY—INTEREST.

Interest on sales tax paid under protest of taxpayer *held*, allow-
able where taxpayer is permitted to recover tax exacted (Act
No. 167, Pub. Acts 1933).

Appeal from Wayne; Callender (Sherman D.), J.
Submitted October 19, 1937. (Docket No. 91, Cal-
endar No. 39,390.) Decided December 29, 1937.

Assumpsit by Standard Oil Company, an Indiana
corporation, against the State of Michigan and
others to recover sums paid as a sales tax under
protest. Judgment for plaintiff. Defendants ap-
peal. Affirmed.

*Arthur J. Abbott,* for plaintiff.

*Raymond W. Starr,* Attorney General, and *Ed-
mund E. Shepherd,* Assistant Attorney General, for
defendant.

SHARPE, J. This is an action for the recovery of
sales taxes paid by plaintiff to the State of Michigan.
The facts are not in dispute. The State of Michigan
through its State board of tax administration as-
sessed the plaintiff company $484.05 on what is
known as cash discounts; $994.85 on what is known
as quantity discounts and $27,599.48 as sales tax on
the amount of the Federal excise tax on gasoline and

lubricating oil sold in retail sales transactions by plaintiff as the manufacturer to consumers for use. Plaintiff paid the above taxes and brings suit for refund. This case involves the validity of sales taxes as to the items above enumerated assessed by appellants on plaintiff's retail sales transactions throughout the State of Michigan for the period of July 1, 1933, to and including August 31, 1934. This action does not challenge the general constitutionality of the Michigan sales tax statute, Act No. 167, Pub. Acts 1933 (Comp. Laws Supp. 1935, § 3663–1 *et seq.*), but the legality of its administration.

During the period above mentioned plaintiff was assessed the sum of $484.05 as sales tax on the amount of cash discounts allowed by it to its customers in the regular course of its business within the State of Michigan.

The assessment was made upon the theory that the excise exacted by the general sales tax act is an annual "tax imposed upon the privilege of making retail sales, measured by the *gross proceeds* of such sales, less deductions allowed by statute;" that under the above act, section 1 (b. 1) (Comp. Laws Supp. 1935, § 3663–1), the term "sale at retail" means "any transaction by which is transferred for consideration the ownership of tangible personal property;" that "gross proceeds" means "the amount received in money, credits, property or other money's worth in consideration of sales at retail within this State, without any deduction on account of the cost of the property sold, the cost of the materials used, the cost of labor or services purchased, amounts paid for interest or discounts, or any other expenses whatsoever, nor shall any deduction be allowed for losses. Credits or refunds for returned goods may be deducted." Act No. 167, Pub. Acts 1933, § 1 (c); and that a "cash discount" is purely

an element of business expense and may not be deducted from gross proceeds. Plaintiff contends that a ''cash discount'' is not a ''proceed'' of a sale and cannot be considered as a basis for the imposition of the sales tax; and that such a tax is a tax on money never received as a part of gross proceeds.

The trial court held that in the allowance of a cash discount, the seller gives the buyer an option to pay either one of two prices, the invoice price less discount if paid within 10 days or a specified time or the invoice price without discount if not paid within such time; and that if the customer elects to pay the discount price within the discount period, the amount so paid is the ''gross proceeds'' of the transaction.

In our discussion of this case and the construction of the statutes applicable thereto, we shall have in mind the general rule that tax laws are to be construed liberally in favor of the taxpayer.

''In the interpretation of statutes levying taxes, it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen.'' *Gould* v. *Gould*, 245 U. S. 151 (38 Sup. Ct. 53).

In the case of *In re Dodge Brothers*, 241 Mich. 665, this court said:

''Tax exactions, property or excise, must rest upon legislative enactment, and collecting officers can only act within express authority conferred by law. Tax collectors must be able to point to such express authority so that it may be read when it is questioned in court. The scope of tax laws may not be extended by implication or forced construction. Such laws may be made plain, and the lan-

guage thereof, if dubious, is not resolved against the taxpayer.''

See, also, *J. B. Simpson, Inc.,* v. *O'Hara,* 277 Mich. 55; and *Montgomery Ward & Co., Inc.,* v. *Fry,* 277 Mich. 260.

Under our present sales tax law, there is no specific provision for cash or trade discount. The word ''discounts'' as employed in section 1 of the act refers to ''discounts'' paid by the vendor to a bank or other discounting agency to have bills of exchange or promissory notes and other negotiable paper paid before maturity. Appellants contend that a *cash discount* is an expense of operation and therefore should be included in the term ''gross proceeds.''

In Arizona, California, Indiana, Mississippi, South Dakota and West Virginia the statutes expressly provide that cash discounts allowed and taken are not to be included within the tax. Haig & Shoup, ''The Sales Tax in the American States,'' p. 629. In Haig & Shoup on page 629 the authors state that the New York regulations provide that trade and cash discounts taken are not to be taxed, although the statute makes no specific provision for either trade or cash discounts. The authors further say:

''A similar ruling may be expected elsewhere, despite general language common to all the statutes except those of North Carolina and Utah, to the effect that no deduction is to be allowed for 'any other expense whatever' and the possibility of argument that the discount is the price paid or the expense incurred by the seller for procuring immediate payment.''

The department of taxation and finance of the State of New York in construing a New York statute which is similar to ours says:

"The 'total amount of the sale price' does not include trade and cash discounts. This is obviously true of trade discounts, and in the case of a cash discount, the seller gives the buyer an option to pay either one of two prices, *viz:* The price less discount if paid within a specified time or the price without discount if not paid within such time. For instance, if A sells to B a bill of goods for $100, net 30 days, with two per cent. off for cash in 10 days, B may choose which option or price he will select. If he pays in 10 days, A accepted $98 as the selling price of the goods and that is the sum which should be included by A in taxable receipts. If, on the other hand, B elects not to pay in 10 days, the selling price is $100 and that is the sum which A must include in receipts." (Regulation No. 7)

The State of Washington has a sales tax law which provides:

"The term 'gross proceeds of sales' means the value proceeding or accruing from the sale of property without any deduction on account of the cost of property sold, expenses of any kind, or losses." Laws of 1933, Chap. 191, § 1 (8).

Under this law the following regulations were adopted:

"Art. 450.03 Cash discounts—In computing tax there may be excluded or deducted, whichever is applicable, by the seller only, the amount of cash discount actually taken by the purchaser. 'Cash discount' means a deduction from the invoice price of goods or articles or charges for services allowed if the bill is paid on or before its due date (8–16–34).

"Art. 450.04 Trade discounts—In computing tax there may be excluded or deducted, whichever is applicable, by the seller only, amounts attributable to trade discount. The term 'trade discount' as here used, applies to the amount by which a seller reduces, in accordance with a contract of sale, either

by discount or rebate, the list or invoice price of articles sold. It does not include discounts or rebates given to a purchaser in return for services rendered for the seller by the purchaser (8–16–34).''

In *Miles* v. *Department of Treasury,* 209 Ind. 172 (199 N. E. 372, 101 A. L. R. 1359), the Supreme Court of Indiana held that discounts are not a part of gross income, the court saying:

''Clause f of section 1 of the act defines the term 'gross income' as the gross receipts of the taxpayer from all sources, but exempts from the income covered by the definition, cash discounts on sales, freight prepaid and repaid by the purchaser, goods sold and returned when the sale price is refunded, and the sale price of an article accepted as part payment on any new article sold, when the full price of the new article is included in the gross income. * * * The first sentence is obviously intended to simplify accounting (referring to the sentence involving discounts) since it excludes things which are not, in fact, income. * * *

''It is contended that the word 'income' as used in the title of the act, is not broad enough to cover gross receipts or gross income within the intent of the act. But the term 'gross income' is used in the title. This term is understood by lexicographers, and in common usage, to mean total receipts.''

In our opinion a cash discount, if taken by the customer is no part of the ''gross proceeds'' of a retail sale under the definition of ''gross proceeds'' as contained in Act No. 167, Pub. Acts 1933, and the judgment of the trial court is affirmed in the amount allowed for cash discounts.

The next item in plaintiff's declaration is a claim for $994.85 which represents the amount paid to the State of Michigan as sales tax on the amount of quantity or trade discounts during the period from July 1, 1933, to and including August 31, 1934. Inas-

much as plaintiff never received this amount either in money or credits, it is their claim that it constituted no part of "gross proceeds" and should not be considered as a basis for the tax. Plaintiff paid the disputed tax item May 28, 1935.

The testimony in the record shows that the terms "trade discounts" and "quantity discounts" are synonymous and refer to the discount that is off a price known as the "list price" for quantity, and varies according to the quantities purchased. The record also shows that such discounts are based upon prior contracts entered into between plaintiff and its customers, the contract determining in advance of the sale the trade or quantity discount to which the customer should be entitled.

It is the claim of the defendants that such discounts are not deductible as they are rebates upon the purchase price and an expense of doing business. The trial court allowed plaintiff's claim.

The record shows that under the tank wagon delivery contract, it is agreed between plaintiff and its customers that in case total deliveries of gasoline shall amount to 1,000 gallons or more per calendar month the discount shall be one and one-half cent per gallon on Red Crown Ethyl gasoline, one and one-half cent per gallon on Standard Red Crown gasoline, and one-half cent per gallon on Stanolind gasoline; that in motor oil contracts entered into with customers the discount is determined in advance and depends upon the amount and kind of oil used. In the so called black oil contracts the discount is one cent per gallon on purchases of from 16 to 99 barrels and one and one-half cent per gallon on purchases of 100 barrels or more. The "trade" or "quantity" discount agreements are entered into in advance.

In our opinion quantity discounts are no part of the ''gross proceeds'' of a retail sale, under the definition of ''gross proceeds'' as contained in section 1 (c) of the sales tax statute.   All of the evidence submitted tends to the conclusion that the quantity discount agreements entered into in advance between plaintiff and its customers do not contemplate refunds on the purchase price of merchandise, but determine the purchase price in advance of the actual sale.   To hold otherwise would result in charging plaintiff more than three per cent. of the proceeds of the retail sales during the period above mentioned.   The judgment of the trial court is affirmed in the amount allowed for trade or quantity discounts.

We now come to the following question: Is it lawful for defendants to assess the sales tax on the amount paid to the United States government as Federal excise tax collected on retail sales of gasoline and lubricating oil, in the case of retail sales direct from producer to consumer?

It is the claim of plaintiff that in the case of retail sales made direct from producer to consumer, the amount of the Federal excise tax on gasoline and lubricating oil is no part of the retail sale price, or ''gross proceeds'' thereof at the time the State sales tax attaches; that the Federal excise tax is a sales tax itself—not a tax on manufacture—and does not attach until the instant the sale is made; that the State sales tax attaches at the same instant, namely, upon consummation of the last sale prior to use or consumption (Michigan sales tax regulations of January 1, 1934) with the result that when the State sales tax attaches, the Federal tax is not a part of the price of the merchandise; and that the inclusion of the Federal tax as a part of the price or ''gross

proceeds" of the sale, and imposition of the State sales tax thereon is, without question, a tax on a tax.

The defendants contend that, in the retail sale of products sold by plaintiff, the Federal excise tax becomes a part of the sale price, and a sales tax computed upon the gross proceeds, including such excise tax is entirely lawful and proper; that the exaction of the Michigan sales tax does not impose a burden upon the effectual exercise of a Federal governmental power.

The facts from which this question arises are that the State of Michigan collected from plaintiff a sales tax from January 1, 1934, to and including August 31, 1934, in the sum of $27,599.48; that during this period the plaintiff company manufactured, produced and refined all the gasoline and lubricating oils which it sold at retail in the State of Michigan; that such sales transactions involved in the above claim are those in which the sales were made by plaintiff company to consumers for use without prior sale to any intermediate distributor; that section 601 (c) of the United States revenue act of 1932 (47 Stat. at L. p. 259) imposes upon lubricating oil sold in the United States a tax of four cents a gallon; that section 617 of the revenue act of 1932, as amended by section 211 of the national industrial recovery act (48 Stat. at L. p. 206) and further amended by section 603 (b) of the revenue act of 1934 (48 Stat. at L. p. 764) imposes on gasoline sold a tax of one cent a gallon. The trial court held that both of the above mentioned Federal taxes are taxes on the sale of gasoline and lubricating oil and not taxes upon their manufacture and permitted plaintiff to recover.

Appellants admit that the Federal excise tax above mentioned is not a tax on the manufacture, but is a tax on the sale.

See, also, *Indian Motorcycle Co.* v. *United States,* 283 U. S. 570 (51 Sup. Ct. 601).

Regulation 44, art. 4 (under the Revenue Act of 1932, as amended) of the United States treasury department relative to the Federal excise tax on gasoline and lubricating oil provides:

"When tax attaches: In the case of a sale, the tax attaches at the instant the sale is made."

The State sales tax is a privilege tax, exacted for the privilege of engaging in the business of selling tangible personal property at retail within the State of Michigan. It is limited in amount to three per cent. of the gross proceeds of the sale at retail. It naturally follows that unless the Federal excise tax had become an integral part of the sale price of the merchandise when the State sales tax attaches thereto, it is illegal to include the amount of the Federal tax in arriving at "gross proceeds."

Rule 3 of Regulations of Michigan State board of tax administration issued July 20, 1933, provides:

"In general, the (sales) tax is imposed upon all persons engaged in the business of selling tangible personal property to the consumer for use. It is intended to cover receipts from a sale which constitutes the last actual transaction prior to ultimate use or consumption; that is the transaction by the last person in the chain prior to actual use or consumption."

Under the above rule, when sales are made directly from producer to consumer the sales tax attaches the instant a sale is made. In view of the fact that the Federal excise tax and the State sales tax attach at the instant a sale is made, it follows that the Federal tax has not become a part of the sale price, but is a fund, which when collected is payable by the manufacturer to the Federal government. Such fund does not become a part of the "gross pro-

ceeds'' realized by the manufacturer from the sale and is not subject to taxation within the meaning of Act No. 167, Pub. Acts 1933.

We have had under consideration the sales tax laws and regulations of other States.* In some States such as Utah, the manufacturer or producer of an article sold for consumption or use may deduct the Federal excise tax, while in such States as North Dakota, Illinois, Colorado, and South Dakota, such exemptions are made by administrative rulings. In Haig & Shoup, The Sales Tax in the American States, p. 660, it is said:

"Exemption of the receipts of other State or Federal taxes. It is likely * * * that tax money actually collected by the tax payer as agent for the State, or Federal government will be generally deducted as moneys in which he has no interest, specifically provided for in the regulations of Indiana and South Dakota, and implicit in the other statutes which purport generally to tax the principal and not his agent.''

The conclusion is inevitable that the Federal excise tax may not be considered as a part of the retail price and the judgment of the trial court is affirmed.

The remaining question concerns interest on the amount of the tax paid by plaintiff under protest on May 28, 1935. In *City of Grand Rapids* v. *Blakely*, 40 Mich. 367 (29 Am. Rep. 539), we held that interest will be allowed against a municipality on the recovery of money exacted as a tax and paid under protest.

The judgment of the trial court is affirmed. Plaintiff may recover costs.

Fead, C. J., and North, Wiest, Butzel, Bushnell, Potter, and Chandler, JJ., concurred.

---

* See ''The Sales Tax in the American States'' by Haig & Shoup, p. 659 *et seq.*