[Civ. No. 12433. First Dist., Div. Two. Apr. 19, 1943.]

STUART M. HAWLEY, as Trustee, etc., Plaintiff and Appellant, v. CHARLES G. JOHNSON, as State Treasurer, etc., Defendant and Appellant.

Bronson, Bronson & McKinnon for Plaintiff and Appellant.

Earl Warren, Attorney General, Robert W. Kenny, Attorney General, H. H. Linney, Assistant Attorney General, and Adrian A. Kragen, Deputy Attorney General, for Defendant and Appellant.

DOOLING, J. pro tem.—Plaintiff sued to recover sales taxes and use taxes paid under protest. The court gave judgment for plaintiff for the use tax and for defendant on the sales tax, and an appeal is here presented by each party as to the portion of the judgment unfavorable to that party. The two

appeals present distinct questions and will be separately dealt with.

## PLAINTIFF'S APPEAL.

 Plaintiff was engaged in the retail sale of automobiles. When a used car was turned in to plaintiff as part payment on a new automobile the sales invoice or contract showed the sale price of the new automobile, the amount of cash paid or to be paid and the agreed value at which the used car was taken in. This agreed turn-in value was generally in excess of the appraised value of the used car. The difference between the appraised value and the turn-in value was entered in the books of the plaintiff as an "overallowance," but on the sales slip or contract received or signed by the customer no such notation appeared and the full turn-in price agreed upon was set out in a single item. The State Board of Equalization ruled that the full turn-in value was taxable as a part of the selling price and the plaintiff because of this ruling and to protect itself collected such tax from its customers but paid the amount attributable to overallowances under protest.

The trial court found "that the plaintiff and the individual purchaser of new automobiles fixed by agreement the valuation of the considerations received by plaintiff at the time that each sale was made." As a conclusion of law the court found "that the assessment of the Board of Equalization based on said valuation was legal and proper."

Plaintiff contends 1. That the finding above quoted is not supported by the evidence and 2. That in any event the sales tax should be based on the appraised or market value of the used automobiles turned in, and that the tax on the so-called overallowance was illegal.

The record contains evidence from plaintiff's own case supporting the finding attacked. The witness Hawley testified:

"Well, I will start in with a new car and you assume a theoretical selling price of $1000 on which a customer turns in a used car. . . . We will assume that that used car which is appraised is appraised at $400. At that point the sales department comes in and, as a matter of negotiation or horse trading, if you want to put it that way, which the automobile business has developed into, a deal is made where the customer pays his car and $500. And that is the normal deal. That is a car is sold for your car and so much money. . . .

"Q. Well, why don't you sell at an actual cash discount? Why go through all this process of alleged overallowance on used cars?

"A. Because we are forced to on account of horse trading. So, what you would do—

"Q. In other words you are trying to fool the public on what they are actually getting, is that right?

"A. Absolutely, and every other dealer is, too. . . .

"Q. In other words, you take it on the other side. You say you allow more on the used car rather than giving a discount on the selling price, is that it?

"A. It is the element of least resistance. . . . In practically every case the conclusion of the sale comes down to one question only, 'My car and how much money?' "

This evidence clearly supports the finding that the seller and purchaser fixed the value of the car turned in by agreement.

■ The question remains whether, where the parties by agreement fix the value of property exchanged as a part of the purchase price of other property, it is proper under our Retail Sales Tax Act to collect a tax based on such agreed value, where such value is made up of an appraised value and an amount added to the appraised value as a result of negotiation or "horse trading" between the parties.

The Sales Tax Act (Stats. 1933, p. 2599; Deering's Gen. Laws, 1937, Act 8493) imposes a tax on "gross receipts." Gross receipts are defined in section 2 (f) of the act:

" 'Gross receipts' means the total amount of the sale . . . price, . . . of the retail sales of retailers, . . . valued in money, whether received in money or otherwise, including all receipts, cash, credits and property of any kind or nature, . . . provided, however, that cash discounts allowed and taken on sales shall not be included . . . .

"For the purpose of this act the total amount of the sale price above mentioned shall be deemed to be the amount received exclusive of the tax hereby imposed . . . ."

The precise question was passed upon by the Supreme Court of Michigan under a statute very similar in language in *Montgomery Ward & Co.* v. *Fry,* 277 Mich. 260. [269 N. W. 166], where at p. 170 [269 N. W.] that court said:

"Count 5 seeks computation of the sales tax in case of sales at retail, partly in cash and partly in used merchandise,

upon the sum of money paid and the actual market value, and not the credit arbitrarily allowed for the secondhand articles.

"Plaintiff appeals from a holding that the gross proceeds of such a sale is the sum of money received, plus the amount allowed the purchaser for such used article.

"The gross proceeds of such a sale constitutes the price fixed at the sale, paid in money in part and secondhand articles accepted at an arbitrary figure by the seller. The loss, if any, in such transactions, as well as the profit, if any, is that of the plaintiff without any share therein by the state."

Similarly in *State* v. *Hallenberg-Wagner Motor Co.*, 341 Mo. 771 [108 S.W.2d 398], the Supreme Court of Missouri construing a similar statute said at p. 401 [108 S.W.2d]:

"The phrase 'whether received in money or otherwise' applies to the preceding portions of the definition of 'gross receipts.' The 'trade-in' automobile is a valuable consideration, capable of being valued in money, its value standing agreed between the parties, and is within the meaning of the term 'otherwise' in said definition."

In *City of Philadelphia* v. *Heinel Motors*, 142 Pa. Super. 493 [16 A.2d 761], the Pennsylvania Superior Court construing a sales tax ordinance of plaintiff city said at pp. 763-4:

"The tax being a tax on the purchaser measured by the amount of the purchase, it is clear that the medium of payment agreed upon is immaterial. In other words, when the dealer in automobiles sells two new automobiles, each for the same price, accepting (a) cash from one customer for the automobile, and (b) personal property at an agreed valuation from another customer, either in complete or partial payment of the purchase price, both purchasers ought to pay the same amount of tax since they are buying identical merchandise and have agreed to pay the same price."

Plaintiff has cited no cases in point opposed to the conclusion expressed in the three opinions quoted from, that under a sales tax act similar in terms to our own the value in money of secondhand merchandise traded in as part of the purchase price is the "value standing agreed between the parties." Plaintiff argues that *Montgomery Ward & Co.* v. *Fry, supra,* was substantially overruled by the Michigan court in *Standard Oil Co.* v. *State*, 283 Mich. 85 [276 N.W. 908]. There is no inconsistency between these cases. In the

Standard Oil Co. case the court was dealing with cash discounts and quantity discounts and held no more than that in sales for money the amount of money actually paid pursuant to an agreement for a discount constituted the gross receipts for the purpose of measuring the tax. *Novicki* v. *Department of Finance,* 373 Ill. 342 [26 N.E. 2d 130] and *Stanolind Crude Oil Purchasing Co.* v. *Cornish,* 16 F.Supp. 464, also relied on by plaintiff are even less in point. In the Novicki case the court held that a tavern keeper was liable for sales tax only on beer actually sold by him and that an assessment could not be levied arbitrarily on the basis of the amount of beer bought by him from the wholesaler, the tavern keeper having testified that some beer was lost over the glass, some in cleaning the coils daily and some given to customers as a free "beer wash" with other drinks. In the Stanolind case it was the uniform and well established custom to deduct 3 per cent from all oil sold on account of dirt and sediment. The court properly held in accordance with the settled practice that the tax should be based on the 97 per cent actually paid for.

Plaintiff argues that the so-called overallowance is no different than a cash discount. It is to be observed that our statute expressly excludes cash discounts from the tax, but imposes the tax on payments in property "valued in money." The parties by bona fide agreement having valued the property in money, under the express terms of the statute have fixed the measure of the tax. To make market value rather than agreed value the measure would create almost insuperable administrative difficulties, since the taxing power would be compelled in every transaction to look behind the agreed value and ascertain the actual market value of the property traded in. In the give and take of the market place the value arrived at by the free negotiation of the parties may safely be relied upon to furnish a reasonable measure of the value in money of property traded in.

### DEFENDANT'S APPEAL.

About 3 per cent of the new automobiles received by plaintiff from the factory, after they arrived at its sales rooms, were selected for use as demonstrators. The purpose of such demonstrators is to stimulate and facilitate the sale of the cars on hand, including the demonstrators, by affording prospective customers an opportunity by driving, and

riding in them, to practically test their performance. The demonstrators are at all times held for resale and are ultimately resold, though at a lower figure than similar cars which have not been so used and, of course, upon their sale a sales tax is paid to the state. A use tax was collected from plaintiff on demonstrators and paid under protest. The trial court gave judgment to plaintiff for the recovery of the use tax so paid.

The Use Tax Act of 1935 (Stats. 1935, p. 1297; Deering's Gen. Laws, 1937, Act 8495a), under which the tax was collected provides in section 2(b):

" 'Use' means and includes the exercise of any right or power over tangible personal property incident to ownership of that property, except that it shall not include the sale of that property in the regular course of business."

Section 4(a) provides:

"The storage, use or other consumption in this state of the following tangible personal property is hereby specifically exempted from the tax imposed by this act:

"(a) Property, the gross receipts from the sale of which are required to be included in the measure of the tax imposed by Chapter 1020, Statutes of 1933, and any amendments made or which may be made thereto." (i.e. The Retail Sales Tax Act.)

The purpose of the Use Tax Act is to supplement the Sales Tax Act. (*Douglas Aircraft Co., Inc* v. *Johnson*, 13 Cal.2d 545, 549 [90 P.2d 572]; *Chicago Bridge & Iron Co.* v. *Johnson*, 19 Cal.2d 162, 165 [119 P.2d 945].) In the Douglas Aircraft Co. case our Supreme Court said at p. 549:

"It will be noted that when the use tax is considered in connection with the other two taxes mentioned, the legislature has provided a comprehensive taxing system applicable to the sale, use, storage or consumption of personal property. The three taxes are mutually exclusive, each taxing privileges not taxed by the other two."

Again at p. 551:

"In the second place it is obvious, from a reading of the act, that the tax here levied is not imposed on the ownership of property as such. It does not apply to the use of property to be resold."

The Supreme Court of the United States in *Southern Pacific Co.* v. *Gallagher*, 306 U.S. 167, 171 [59 S. Ct. 389, 83 L. Ed. 586] said:

"As property covered by the sales tax is exempt under the use tax, all tangible personality sold or utilized in California is taxed once for the support of the state government."

We think that the learned trial judge correctly concluded that the use tax was improperly collected on so-called demonstrator automobiles, and that the use of such automobiles was for the purpose of sale in the regular course of business within the meaning of section 2(b) above quoted and also within the exemption of section 4(a).

Plaintiff might have used all new automobiles in stock for demonstration purposes, in which event the sale price of all would have been somewhat decreased by such use. That it selected only 3 per cent of the cars on hand for that purpose can make no difference in principle. Goods displayed in a show window may become faded or soiled thus decreasing their resale price, phonographs and radios may become shopworn by being played for customers, goods sent upon approval may be returned somewhat depreciated and their full sale price refunded. Those are hazards of the trade incident to the effort to make sales and are not the character of use sought to be reached by the use tax. So long as the depreciation in sales value of the property held for sale is a reasonable incident of the effort to market the goods we are satisfied that the goods so used are not subject to the use tax provided by the Use Tax Act.

The judgment is affirmed, neither party to recover costs on appeal.

Nourse, P. J., and Spence, J., concurred.