[Civ. No. 8869.   Third Dist.   Feb. 5, 1957.]

SAFEWAY STORES, INC. (a Corporation), Respondent,
v. STATE BOARD OF EQUALIZATION et al., Appellants.

Edmund G. Brown, Attorney General, James E. Sabine and Irving H. Perluss, Assistant Attorneys General, for Appellants.

Orrick, Dahlquist, Herrington & Sutcliffe for Respondent.

SCHOTTKY, J.—Respondent is engaged in the retail grocery business and in the related business of manufacturing and packing the grocery products sold by it through its retail outlets.   During the period from July 1, 1945, to June 30, 1947, there was a severe paper shortage and respondent was unable to obtain an adequate supply of paper bags.   At various times during this period respondent purchased from sellers in the State of California certain empty cardboard cartons which were suitable for use in the packaging and delivery of groceries to retail customers.   The cartons were

purchased through the Douglas Paper Company, an unincorporated division of respondent for which separate books were kept. At the time of purchase a resale certificate was given to the seller of the cartons and no sales tax was paid.

After purchasing the cartons the Douglas Paper Company Division delivered them to various other units of respondent's operations. These operating units placed retail grocery items such as canned goods in these cartons and delivered the cartons and their contents to respondent's retail grocery stores. There the contents were removed from the cartons and placed on open shelves. The empty cartons were then placed at or near the check-out counters in the stores and were used for the packaging of grocery products purchased by retail customers. Substantially in excess of 80 per cent of such cartons were used for packaging and delivery of groceries purchased by retail customers. The remainder were not used for delivery to retail customers because the cartons had been damaged.

Appellants concluded that the sales of cartons to respondent's Douglas Paper Company Division had been subject to sales tax and that the resale certificates should not have been given. Accordingly, appellants assessed sales taxes against respondent. Respondent paid the taxes under protest and filed a claim for refund, which was denied. Respondent then filed an action for a refund of said sales taxes, and following a trial, judgment was entered in respondent's favor for the sum of $7,145.87 with interest. This appeal is from said judgment.

The relevant portions of the Revenue and Taxation Code here involved are as follows:

"Sec. 6007. A 'retail sale' or 'sale at retail' means a sale for any purpose other than resale in the regular course of business in the form of tangible personal property. . . ."

"Sec. 6364. There are exempted from the taxes imposed by this part, the gross receipts from sales of and the storage, use, or other consumption in this State of:

" (a) Nonreturnable containers when sold without the contents to persons who place the contents in the container and sell the contents together with the container. . . ."

"Sec. 6094. If a purchaser who gives a certificate makes any use of the property other than retention, demonstration, or display while holding it for sale in the regular course of business, the use shall be deemed a retail sale by the purchaser as of the time the property is first used by him, . . ."

Appellants contend that the sale of the cartons to Safeway was for a "purpose other than resale" within the meaning of section 6007; that Safeway used the cartons far more than by merely placing "the contents in the container and sell[ing] the contents together with the container" within the meaning of section 6364, subdivision (a); and that because Safeway gave the seller of the cartons resale certificates and because Safeway used the cartons in its business, such use was a taxable retail sale under section 6094.

Appellants argue that it is settled law in California that the eventual resale of personal property by a person who has purchased such property for use will not prevent the original sale of such property from being a retail sale subject to tax. They cite *Kirk* v. *Johnson,* 37 Cal.App.2d 224 [99 P.2d 279], in which it was held that sales of cows to dairymen for the purpose of producing milk were not sales for resale merely because the purchaser ultimately intended to market the cows as beef. They also cite *People* v. *Puritan Ice Co.,* 24 Cal.2d 645 [151 P.2d 1], in which it was held that the sales of ice to shippers and packers of vegetables during shipment were retail sales subject to sales tax, although the purchasers of the vegetables were billed separately for the ice, since the ice was used by the shippers and packers as a preservative prior to the resale.

Respondent in reply points out that from 1936 to the present it has been recognized in appellants' regulations (see Cal. Admin. Code, title 18, § 1989) that sales of containers are not "retail sales" if the purchaser places goods in the containers and sells the contents together with the containers. In the case of *Coca-Cola Co.* v. *State Board of Equalization,* 25 Cal.2d 918 [156 P.2d 1], appellants argued that this administrative construction was in excess of their own powers under the statute. The court held that the construction was reasonable and authorized by the statute. In that case the Coca-Cola Company had purchased wooden barrels and kegs in which it stored, transported and sold its products. The court held that the sale of these containers to the Coca-Cola Company was not a "retail sale" and was accordingly not taxable. The court said at pages 920-922:

"Although there is considerable conflict in the authorities concerning the time when the sale of a container at retail occurs, in 1936 the Board of Equalization, acting in accordance with the authority vested in it by section 27 of the Retail

Sales Act, *supra,* adopted a rule which declared the policy it would follow in administering the California statute. That rule, in varying form, was in force at the time of the transactions which are the basis of the appellant's claim for refund. From January 22, 1936, to August 29, 1939, insofar as is pertinent, it read as follows: 'Gross receipts from sales of containers such as fruit boxes, burlap sacks, bottles, cans and packing cases to growers, packers, bottlers and others who place the contents in the containers are not taxable if the containers are sold with the contents. . . . If, however, the containers are not sold with the contents, as is generally the case with . . . containers upon which deposits are taken to insure their return, the gross receipts from the sale of containers are taxable.' At all times subsequent to August 29, 1939, the wording, insofar as is material to the present case, was: 'The term "containers" as used herein means the articles and devices in which tangible personal property is placed for shipment and delivery. . . . The term "returnable containers" as used herein means those containers which are returned by the buyers of the contents and re-used by the packers, bottlers or sellers of the commodities contained therein. A container is classed as a returnable container if title to the container is retained by the packer, bottler, or seller of the contents or if the packer, bottler, or seller of the contents charges a deposit on the container. . . . The term "nonreturnable containers" as used herein means those containers which are sold with the contents and are not returned by the buyers of the contents for re-use by the packers, bottlers, or sellers of the contents. . . . Gross receipts from sales of nonreturnable containers to persons who place commodities to be sold in such containers are sales for resale and, accordingly, are not taxable.'

"... But the Board of Equalization now takes the position that its adoption of rule 10, construing the sales tax law to exempt the sale of nonreturnable containers to original users, was erroneous and contrary to the terms of the act. In any event, the board adds, the particular sales now in controversy are not within the meaning of the rule, for it does not appear that the barrels or kegs containing syrup were nonreturnable. However, the rule does not purport to exempt the sale of nonreturnable containers from taxation; it merely interprets the statute by explaining that the sale of 'nonreturnable containers to persons who place commodities to be sold in such containers' is not a retail sale and is

therefore not taxable. There is no provision in the statute requiring a tax to be paid upon such transactions and the sales of barrels and kegs by the cooperage companies to the Coca-Cola Company clearly fall within the board's rule.''

We cannot agree with respondent that the Coca-Cola Company case is determinative of the issue involved in the instant case, for in the Coca-Cola case there was no evidence of any use of the barrels other than to place the Coca-Cola syrup in them and sell them with the syrup. Accepting the trial court's findings in the instant case that respondent purchased the cartons for the purpose of using them by putting in them the items sold to customers and selling the package so made up to such customers, we are unable to see how respondent can escape from the effect of section 6094 of the Revenue and Taxation Code, which provides that if a purchaser who gives a certificate ''makes any use of the property other than retention, demonstration, or display while holding it for sale in the regular course of business, the use shall be deemed a retail sale by the purchaser as of the time the property is first used by him.''

At the time respondent purchased the empty cartons, it gave a certificate to the seller, certifying that it was then purchasing the cartons for resale. It then made, however, a substantial use of the cartons other than for retention, demonstration, or display while holding them for sale in the regular course of business. This use consisted of using the empty cartons as receptacles for packing its manufactured products and transporting them to its retail outlets. That use was an intermediate and completed use, for it had nothing to do with the resale. When the packaged goods reached the retail outlets, the goods were taken from the containers and otherwise displayed for sale. Eighty per cent of the cartons that had been so used, being in sufficiently sound condition, were then used as receptacles into which to put items which retail purchasers had selected from the goods being offered for sale by plaintiff. By the plain terms of section 6094 this intermediate and independent use must be ''deemed a retail sale'' by plaintiff as of the time that use was made by it, for whatever may be said as to the original sale of the cartons having been made for resale and therefore exempt from sales tax, we believe that the use made of said cartons as hereinbefore detailed made them subject to the tax.

In view of the foregoing we conclude that the court erred

in holding that the state was not entitled to collect sales tax on the cartons here involved.

The judgment is reversed with directions to enter judgment for defendants.

Van Dyke, P. J., and Peek, J., concurred.