[Civ. No. 17437. Third Dist. Sept. 27, 1978.]

J. C. McCONVILLE, Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION,
Defendant and Respondent.

**COUNSEL**

Griswold, Bissig, La Salle & Cobb and Lyman D. Griswold for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Ernest P. Goodman, Assistant Attorney General, Edward P. Hollingshead and Charles C. Kobayashi, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**EVANS, J.**—Plaintiff, J. C. McConville, appeals from a judgment of the Superior Court of Sacramento County entered in favor of the defendant State Board of Equalization (Board). Plaintiff challenged a ruling made by the Board denying a refund of a use tax.

Since 1968, plaintiff has engaged in the business of buying, breeding, and selling quarter horses and holds a State of California seller's permit.

The dispute in this case centers around the use tax liability of plaintiff with respect to 20 horses held for sale during the period of July 1, 1969, to December 31, 1971, inclusive. One of these horses, "Three Seas," was a "teasing stallion." The remainder were mares, apparently bred while being held for sale and were either in foal or with foals at their sides. Upon sale of the mares, the foals were either sold or retained for breeding.

I

Plaintiff contends that breeding the mares to get them in foal while being held for sale was not a use subjecting them to liability under the Use Tax Law.

California Revenue and Taxation Code[1] section 6094, subdivision (a), provides in pertinent part: "(a) If a purchaser who gives a resale certificate makes any use of the property other than retention, demonstra-

---

[1]Unless otherwise noted, all statutory references will be to the Revenue and Taxation Code.

tion, or display while holding it for sale in the regular course of business, the use shall be taxable to the purchaser . . . ." Section 6009 of the code defines a use to include "the exercise of any right or power over tangible personal property incident to the ownership of that property, . . . except that it does not include the sale of that property in the regular course of business." Additionally, California Administrative Code, title 18, section 1669, subd. (a) provides: "A purchaser of tangible personal property who gives a resale certificate therefor, and who uses the property *solely* for demonstration or display while holding it for sale in the regular course of business, is not required to pay tax on account of such use. Except as otherwise provided in this regulation, if the property is used for *any purpose other than or in addition to* demonstration or display, . . . the purchaser must include in the measure of the tax paid by him the purchase price of the property." (Italics added.)

■ The Use Tax Law (§§ 6201-7273 et seq.) was designed to reach transactions involving property purchased from outside the state, not subject to California sales tax so that an unfair burden would not be placed upon local retailers engaged in intrastate commerce; it is also designed to reach transactions where property was purchased with the intent to resell but where there is a subsequent change of intent and a change of use. (See *Union Oil Co.* v. *State Bd. of Equal.* (1963) 60 Cal.2d 441, 449 [34 Cal.Rptr. 872, 386 P.2d 496]; *Levine* v. *State Board of Equalization* (1956) 142 Cal.App.2d 760, 766 [299 P.2d 738]; 5 Witkin, Summary of Cal. Law (8th ed. 1974) Taxation, § 275, pp. 4230-4231.) The Use Tax Law is complemental to the California Retail Sales Act of 1933 so that all taxable property is taxed once for the support of the state government. (*Chicago Bridge & Iron Co.* v. *Johnson* (1941) 19 Cal.2d 162, 165-166 [119 P.2d 945].)

■ "In resolving the issue at hand, . . . we note that as a general rule . . . provisions and statutes granting exemption from taxation are strictly construed to the end that such concession will not be enlarged nor extended beyond the plain meaning of the language employed (*Cypress Lawn C. Assn.* v. *San Francisco* (1931) 211 Cal. 387, 390 [295 P. 813]; *San Francisco* v. *San Mateo* (1941) 17 Cal.2d 814, 817 [112 P.2d 595]; *Seventh Day Adv. Kan. Conf. A.* v. *Board of Cty. Com'rs* (1973) 211 Kan. 683 [508 P.2d 911, 917])." (*Honeywell Information Systems, Inc.* v. *County of Sonoma* (1974) 44 Cal.App.3d 23, 27 [118 Cal.Rptr. 422]; see *Regents of University of California* v. *State Bd. of Equalization* (1977) 73 Cal.App.3d 660, 665-666 [140 Cal.Rptr. 867].)

With these use tax principles in mind, we consider whether breeding the mares held for sale was a "use . . . other than retention, demonstration, or display while holding it for sale," subjecting plaintiff to use tax liability as required by section 6094, subdivision (a).

■ If in the normal course of business use of property relates to the sale of that property, no taxable use is presented. (*Hawley* v. *Johnson* (1943) 58 Cal.App.2d 232, 237 [136 P.2d 638].) In *Hawley,* the use of automobile demonstrators by prospective purchasers was held to be within the regular course of business of selling automobiles and hence not a sale within the contemplation of the Use Tax Law.

In *Hawley,* the court stated, "So long as the . . . [use] of the property held for sale is a reasonable incident of the effort to market the goods we are satisfied that the goods so used are not subject to the use tax provided by the Use Tax Act." (*Id.,* at p. 239.)

Two earlier decisions of this court, *Safeway Stores* v. *State Bd. of Equal.* (1957) 148 Cal.App.2d 299, 303 [306 P.2d 597], and *Kirk* v. *Johnson* (1940) 37 Cal.App.2d 224, 227-229 [99 P.2d 279], cited and relied upon by the defendant are distinguishable.

In *Safeway Stores,* respondent Safeway purchased empty cartons during a paper shortage as a substitute for bags, and gave a resale certificate to the seller certifying that the cartons were purchased for resale. Before use as containers for retail customers' purchases, a substantial use was made of the cartons. Safeway warehouses packaged goods in them and shipped them to the retail outlets. Upon that use the tax liability was properly assessed.

*Kirk* v. *Johnson, supra,* held that the transfer of dairy cows to dairy operators was neither a tax-exempt sale of a product consumed by humans, nor was it a sale for purpose of resale only, despite the subsequent and final sale of the dairy cows to a beef processor as beef cows. (37 Cal.App.2d at pp. 227-229.) The court upheld imposition of sales tax on the original sale, noting the extensive use made of the animals as milk producers before their sale for slaughter.

Any evaluation of the terms "use . . . other than retention, demonstration, or display" must utilize a reasonable construction of the terms used in the regulation and the statute. The previous cases indicate that the concept of incidental use not related to retention, demonstration, or

display must be determined by a logical relationship to sales and business custom and usage.

In the present case plaintiff bred the mares as an incident of the effort to effect their sale. The record establishes without contradiction that mares which have not foaled or are not in foal are of substantially reduced value and difficult to sell; a mare without offspring or not currently in foal is suggestive of a mare with breeding problems, and a showing that the mare is capable of conceiving is necessary to create a purchase interest toward the animal. Our conclusion is unaltered by the fact that plaintiff might separately sell the foals produced by the mares held for sale. The record contains undisputed evidence that breeding the mares, while they are held for sale, is not only a common usage in the business but a necessary one. We conclude that breeding was a reasonable incident to the sale and not a use incompatible with the requirement that the mares be held only for demonstration or display.

Finally, should plaintiff decide to retain the mares for breeding purposes rather than sale, they will be liable under the Use Tax Law.

Plaintiff concedes that if the teasing stallion is placed in service while held for sale, the use tax is applicable. His teasing ability[2] does not need proof to generate buying interest.

## II

Plaintiff also contends that the trial court erred by finding, in effect, that the capitalization of the horses in question by her accountant and their treatment as depreciable assets was itself a tax use. The trial court considered the accountant's tax treatment of the animals as an *indication* of an intent to use the animals other than for retention, demonstration, or display, since inventory or property held for sale in the ordinary course of business is *not* subject to a depreciation allowance as a capital asset (§ 18161). The court considered plaintiff's knowledge and acquiescence in the treatment of the animals as capital assets as militating against an inference that they were held solely for resale. Moreover, section 18182, subdivision (b), specifically provides a depreciation allowance for breeding horses held not less than 24 months. (See also § 17208, subd. (a)(1).) The horses in question were

---

[2]A teasing stallion is used to encourage the mare to receive other stallions. A teaser does not breed the mares.

listed as "breeding horses" for purposes of property tax assessment and were depreciated as capital assets.

Plaintiff's assertion that the tax treatment accorded these animals by her accountant as capital assets was erroneous, and should not be binding upon her in this action, is rejected. She was able to capitalize and depreciate the property on a declining basis for purposes of federal and state taxation. In fact, in 1971, her breeding stock was listed at a cost of $120,095 while inventory horses held for sale were listed at $8,024. It was proper, therefore, for the court, in reaching its conclusion that the animals were subject to the use tax, to consider plaintiff's treatment of the horses for purposes of state and federal income taxation.

### III

Plaintiff finally argues that there is an absence of substantial evidence to support the judgment of the trial court. As the Supreme Court stated in *Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362], " 'It is well established that a reviewing court starts with the presumption that the record contains evidence to sustain every finding of fact.' [Citations.]"

The plaintiff correctly contends there is not sufficient evidence to support the finding that breeding a mare held for sale is a use of the animal subjecting it to a use tax. The record presented dispels the judicial presumption enumerated in *Foreman & Clark Corp.* v. *Fallon, supra.* However, it does contain sufficient substantial evidence to support the finding that plaintiff, for federal and state income tax purposes, considered the subject animals to be capital assets which subjects them to use tax liability.

For this reason, the judgment is affirmed.

Regan, Acting P. J., concurred.

Janes, J., concurred in the result.

On October 24, 1978, the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied November 24, 1978.