648 P.2d 335

**UNITED NUCLEAR CORPORATION, a corporation, Plaintiff-Appellant,**

v.

**REVENUE DIVISION, TAXATION AND REVENUE DEPARTMENT, State of New Mexico, Defendant-Appellee.**

No. 5255.

Court of Appeals of New Mexico.

April 6, 1982.

Certiorari Denied July 6, 1982.

Norman S. Thayer, Sutin, Thayer & Browne, P. C., Albuquerque, Larry D. Maldegen, Bigbee, Stephenson, Carpenter, Crout & Olmsted, Santa Fe, for plaintiff-appellant.

Denise D. Fort, Asst. Atty. Gen., Taxation & Revenue Dept., Santa Fe, for defendant-appellee.

## OPINION

LOPEZ, Judge.

United Nuclear Corporation (taxpayer) appeals a decision of the New Mexico Taxation and Revenue Department (department) denying its request for refund of severance taxes in the approximate sum of $896,896.00 under § 7–1–25, N.M.S.A.1978.[1] We affirm.

The taxpayer filed two requests for refunds of severance taxes paid to the State of New Mexico on uranium concentrate which was mined in New Mexico, shipped outside the state by the taxpayer, and sold and delivered to buyers at a point outside of New Mexico. A formal hearing on both requests was held by a hearing officer designated by the Commissioner, as provided by § 7–1–24, N.M.S.A.1978. The hearing officer entered a final decision as provided by § 7–1–24(H), denying the requests for refund.

The taxpayer engages in the business of severing and processing uranium-bearing ore in New Mexico to obtain and sell uranium concentrate. The chemical compound of the uranium concentrate is $U_3O_8$, and it is commonly known as "yellowcake". The taxpayer had sales contracts with several customers which stated the unit price per pound for the concentrate. The contracts also provided that the buyers were to pay the taxpayer the amount of applicable severance tax, which is sometimes referred to as "reimbursed" tax. When billing the customers, the taxpayer separately stated the total amount of yellowcake, the price per pound, the total price times pounds, and the New Mexico severance tax. Typically, the severance tax shown on the billing was based on a unit price of $42.75, and was computed as follows:

| | |
|---|---:|
| Statutory [($40 – $50 base)] | 1.99 |
| + 12.5% of excess over $40 | .34 |
| | 2.33 |
| + 12.5% of 2.33 | .29 |
| Severance tax per pound | 2.62 |

The department originally ruled that severance tax billed to and reimbursed by the purchaser would be added to the sales price one time only, as in the above example. See Ruling No. 77–700–5. The department later decided that Ruling No. 77–700–5 was incorrect, but conceded that in this particular case it was estopped by its decision in

---

1. We cite to sections of the Tax Administration Act, § 7–1–1 through § 7–1–82 N.M.S.A.1978, which are applicable to this case. The current Tax Administration Act appears in N.M.S.A. 1978 (Repl.1979).

the ruling from imposing additional taxes on the taxpayer. In the future, however, the tax will be imposed on the total amount received by the taxpayer. In the above example, if the taxpayer charges the customer $2.62, it will have to add 12.5% of $ .29 to the taxes due, and so on.

The issue on appeal is whether the taxpayer, when it computes the severance tax due the State of New Mexico, can deduct the amounts it labeled taxes from the taxable value of the yellowcake. The taxpayer challenges the department's decision on the grounds that: 1. Section 7–26–4(F), N.M.S.A.1978, is ambiguous and should be interpreted in favor of the taxpayer; and 2. That in calculating the severance tax, the taxable value should not include the amount of the severance tax itself.

The following statutes from N.M.S.A. 1978 [2] are pertinent to a resolution of these issues:

7–26–3. Imposition of tax; denomination as "severance tax."

For the privilege of severing natural resources, there is imposed on any severer of natural resources in New Mexico an excise tax on the taxable value or the quantity of natural resources severed and saved by or for him as determined under, and at the rates provided in the Severance Tax Act [7–26–1 to 7–26–8 NMSA 1978]. The tax imposed by this section shall be known as the "severance tax."

7–26–4. Determination of taxable value of natural resources.

. . . .

F. The taxable value to be reported for severed and saved uranium-bearing material is the sales price per pound of the content of $U_3O_8$ contained in the severed and saved or processed uranium, regardless of the form in which the product is actually disposed of. It is presumed, in the absence of preponderant evidence of another value, that the taxable value means the total amount of money and the reasonable value of other consideration received, or either of them, for the severed and saved uranium ore or processed uranium "yellowcake" concentrate. However, if the severed and saved uranium ore or "yellowcake" concentrate is not sold as ore or concentrate, the gross value shall be the value of $U_3O_8$ in ore or "yellowcake" concentrate represented in the final product. Taxable value shall be gross value without deduction of any kind.

7–26–7. Severance tax on uranium.

A. The severance tax on uranium is measured by the quantity of $U_3O_8$ contained in and recoverable from severed and saved uranium-bearing material whether that material is ore or solution, measured in a standard manner established by regulation of the commissioner of revenue. The taxable event is the sale, transportation out of New Mexico or consumption of the uranium-bearing material, whichever first occurs. Upon each pound of severed and saved $U_3O_8$ contained in severed uranium-bearing material, there shall be collected from the severer a severance tax as specified in the following table:

If Taxable Value Per Pound of $U_3O_8$ is:

| Over | But Not Over | The Tax Per Pound Shall Be: |
|------|------|------|
| $ 0 | $ 5.00 | 1.0% |
| 5.00 | 7.50 | $ .05 plus 1.6% of excess taxable value over $5.00 |
| 7.50 | 10.00 | .09 plus 2.0% of excess taxable value over $7.50 |
| 10.00 | 15.00 | .14 plus 3.0% of excess taxable value over 10.00 |
| 15.00 | 20.00 | .29 plus 4.0% of excess taxable value over 15.00 |
| 20.00 | 25.00 | .49 plus 5.0% of excess taxable value over 20.00 |
| 25.00 | 30.00 | .74 plus 7.0% of excess taxable value over 25.00 |
| 30.00 | 40.00 | 1.09 plus 9.0% of excess taxable value over 30.00 |
| 40.00 | 50.00 | 1.99 plus 12.5% of excess taxable value over 40.00 |
| 50.00 and over | | 3.24. |

2. The Severance Tax Act which applies to this case was enacted by Laws of 1977, ch. 102, as codified at § 7–26–1 through § 7–26–9, N.M.S.A.1978. The current Severance Tax Act, appearing in N.M.S.A.1978 (Repl.1980), is an amended version and is not applicable to this case.

B. Notwithstanding the provisions of Subsection A of this section, a taxpayer may elect, prior to August 1, 1977, to register with the bureau [division] of revenue any bona fide arms length contract for sale of uranium-bearing material entered into prior to January 1, 1977, which does not allow the taxpayer to obtain reimbursement for all of the additional taxes imposed by Subsection A of this section. The commissioner of revenue [director of the revenue division of the taxation and revenue department] shall provide a system for the registration of such contracts. There shall be collected from the severer of uranium-bearing material sold pursuant to a registered contract a severance tax of 1.25% of the taxable value of each pound of $U_3O_8$ contained in and recoverable from the severed and saved uranium-bearing material. The taxable event is the sale or transportation out of New Mexico, whichever first occurs. The taxpayer's right to have his liability determined under this subsection shall terminate if the registered contract is or has been amended in any manner after January 1, 1977 and the effect of the amendment is to increase the total amount of money and the reasonable value of other consideration, or either of them, received for the uranium-bearing material or to increase the total quantity of uranium-bearing material to be sold under the registered contract or to otherwise increase the value of the registered contract to the seller. In any event, the taxpayer's right to have his liability determined under this subsection shall terminate on December 31, 1984.

7–26–10. Purpose of act.

The purpose of this act is to impose a unified system of severance taxes upon the severance of energy resources in the form of oil, gas, coal and uranium, taking into account the quantity of energy producible, in addition to the value of the product or natural resource, in a manner consistent with a unified system.

The legislature finds that certain interferences with the market and certain existing contracts have from time to time imposed restrictions which require variances from the stated purpose of the act. Until such time as these restrictions are removed, the achievement of its goal is not possible, but this act achieves as much of that goal as is currently possible.

■ The taxpayer contends that there is an ambiguity in § 7–26–4(F). We disagree. In *Reed v. Jones*, 81 N.M. 481, 468 P.2d 882 (Ct.App.1970), this court stated:

The burden is on the taxpayer to establish clearly his right to the deduction and the intention to authorize the deduction claimed by the taxpayer must be clearly and unambiguously expressed in the statute. (citations omitted).

.        .        .        .        .

In speaking on exemptions from taxation the United States Supreme Court stated in *Hoge v. Railroad Co.*, 99 U.S. 348, 25 L.Ed. 303 (1879), the following:

" * * * But though this power is recognized it is accompanied with the qualification that the intention of the legislature to grant the immunity must be clear beyond a reasonable doubt. It cannot be inferred from uncertain phrases or ambiguous terms. The power of taxation is an attribute of sovereignty, and is essential to every independent government. Stripped of this power, it must perish. Whoever, therefore, claims its surrender must show it in language which will admit of no other reasonable construction. If a doubt arises as to the intent of the legislature, it must be solved in favor of the State."

Any exception or rights to deductions must be contained within the expressed letter or necessary scope of the exempting language. See *McKee v. Bureau of Revenue*, 63 N.M. 185, 315 P.2d 832 (1957).

■ A statute is said to be ambiguous when it is susceptible to more than one interpretation. The applicable language of § 7–26–4(F), "the taxable value means the total amount of money and the reasonable value of other consideration received, or either of them, for the severed and saved

uranium ore or processed uranium 'yellow-cake' concentrate," is not ambiguous. It means that the taxpayer must include in the taxable value all monies, including the amount of severance tax that it has billed the customers.

Section 7–26–4(F) is very specific when it prohibits any allowance of any deduction. It provides in part "gross value without deduction of any kind."

The taxpayer argues in support of ambiguity that the act only intends to tax the value of the minerals; that the value of the minerals is not necessarily equal to the total sales price; and that the value of the minerals does not include severance tax or reimbursed tax separately stated. If we were to follow the logic of the taxpayer's argument, we would not be interpreting the existing statutes, we would be legislating a new section, a power we do not have.

We have examined the principle cases cited by the taxpayer in support of its contentions: *Standard Oil Co. of Indiana v. State Tax Com'r*, 71 N.D. 146, 299 N.W. 447 (1941); *Standard Oil Co. v. State*, 283 Mich. 85, 276 N.W. 908 (1937); *Socony-Vacuum Oil Co. v. City of New York*, 247 App.Div. 163, 287 N.Y.S. 288, aff'd 272 N.Y. 668, 5 N.E.2d 385 (1936); *Ross Jewelers v. State*, 260 Ala. 682, 72 So.2d 402 (1953). In these cases, the legal incidence of the tax in question was on the purchaser, not on the seller. In other words, in these cases, the legal responsibility for payment of the tax fell on the buyers and not on the sellers, which is not our situation. Therefore, these cases are not applicable to the case at bar.

The principal case which supports our holding is *Lash's Products Co. v. U.S.*, 278 U.S. 175, 49 S.Ct. 100, 73 L.Ed. 251 (1929). Mr. Justice Holmes, who wrote the majority opinion said:

> This is a suit to recover the amount of certain taxes paid under the Revenue Act of 1918 (Act of February 24, 1919, chap. 18, § 628, 40 Stat. at L, 1057, 1116). By § 628 there is imposed on "soft drinks, sold by the manufacturer, ... in bottles or other closed containers, a tax equivalent to 10 per centum of the price for

which so sold." This tax was paid by the petitioner, calculated at 10 per centum of the sum actually received by it for the goods sold. But the petitioner had notified its customers beforehand that it paid the 10 per cent tax, and it contends that in this way it passed the tax on, and that the true price of the goods was the sum received less the amount of the tax. The phrase "passed the tax on" is inaccurate, as obviously the tax is laid and remains on the manufacturer and on him alone. *Heckman & Co. v. I. S. Dawes & Son Co.*, 56 App.D.C. 213, 12 F.2d 154. The purchaser does not pay the tax. He pays or may pay the seller more for the goods because of the seller's obligation, but that is all.

. . . . .

The price is the total sum paid for the goods. The amount added because of the tax is paid to get the goods and for nothing else. Therefore, it is part of the price, and if the statute were taken literally, as there would be no reason for not taking it if it were now passed for the first time, there might be difficulty in accepting the commissioner's distinction even if the tax were made a separate item of the bill. But if, in view of the history in the solicitor general's brief, we assume with him that the practice of the commissioner has been ratified by Congress, we agree with his argument that the petitioner must take the privilege as it is offered. It did not bill its tax as a separate item, and the commissioner's regulations notified it that "if the sales price of a taxable beverage is increased to cover the tax, the tax is on such increased sales price," although they purported to make a different rule "when the tax is billed as a separate item."

Also in *Merchants Cigar & Candy Co. v. City of Birmingham*, 245 Ala. 587, 18 So.2d 137 (1944), the Alabama Supreme Court considered the question of whether a wholesaler of cigarettes could deduct from its gross receipts amounts which the wholesaler paid the state and city for stamp tax charged on each package of cigarettes. The

wholesaler stated a separate charge for the stamp tax on his invoices to his retailers. The wholesaler argued that he was collecting the stamp tax for the state and the city, so that the money which he collected did not form part of its receipts but rather was a reimbursement he paid to the city and state. The court rejected this argument, holding that the tax was levied on the seller and that the amounts paid the seller for taxes formed part of his sales price. Accord *Canteen Service Inc. v. State*, 83 Wash.2d 761, 522 P.2d 847 (1974). The fact that the wholesaler separately stated an amount for taxes was held to be irrelevant.

In *State Tax Commission v. Quebedeaux Chevrolet*, 71 Ariz. 280, 226 P.2d 549 (1951), the Arizona Supreme Court was concerned whether a seller of automobiles could exclude from his gross proceeds the amount of a tax which he stated separately on his billing to his customers. The Arizona statute involved in this case was a tax upon the privilege of engaging in business measured by the taxpayer's gross proceeds. The taxpayer argued that to include the amounts he had billed customers for taxes in his taxable receipts would result in a "tax on a tax." In response, the court stated, "[t]he phrase 'tax on a tax' admittedly has a certain amount of popular appeal since it has the connotation of being extremely unjust, but the reasoning advanced to support the terminology indicates the weakness of this argument." The court noted that the amounts paid the taxpayer which were labeled taxes were:

> no different from rent, utilities, ad valorem taxes or wages . . . in that it constitutes part of the over-all cost of operation which must be considered when plaintiff fixes the selling price of the tangible personal property which it does sell. *Each item considered in setting the ultimate selling price, including the tax now in question, is paid by the consumer solely to get the goods.*

The court was equally firm in rejecting the taxpayer's contention that it was a mere tax collector, stating that the legal incidence of the tax was on the taxpayer and no one else.

The court in *State Tax Commission v. Quebedeaux Chevrolet* explicitly rejected the contention that separately stating an amount for taxes in a bill to a customer made any difference in the computation of the tax by the state. The taxpayer in the case at bar claimed that it should be allowed a deduction for the severance taxes, because the taxes were stated as separate items on the billing. However, we find no statutory authority for such a scheme.

The determination of the legal incidence of the taxes in question is critical to our decision.

■ Where the tax is imposed on the buyer and the seller merely acts as the collector of the tax, the amounts collected by the seller can be excluded from the gross receipts, e.g. *State v. Thoni Oil Magic Benzol Gas Stations, Inc.*, 121 Ga.App. 454, 174 S.E.2d 224 (Ct.App.1970), aff'd 226 Ga. 883, 178 S.E.2d 173 (1970). In the case at bar the legal incidence of the severance tax falls on the taxpayer and not the buyer. In *Ferrara v. Director Division of Taxation*, 127 N.J.Super. 240, 317 A.2d 80 (1974), the Superior Court held that the state and federal gasoline taxes were imposed on the producer or distributor and thus merely constituted an element of cost passed down to the retailer and were an item of cost or expense required to be included within retailer's gross receipts. The court said:

> the use by a producer or distributor of a billing invoice wherein the federal tax is separately listed cannot affect its true legal incidence.
>
> .    .    .    .    .
>
> The liability for payment of the tax is on the producer or distributor who makes the sale. If it fails to remit payment, the Federal Government does not have the option of proceeding directly against the purchaser-consumer. The goverment [sic] may seek to collect the tax only from the producer or distributor. We find this determinative and hold that the legal incidence of the federal gasoline tax is on the producer. . . . The tax arises and the

302

taxable event occurs whenever the producer or distributor makes a sale, whether that be to a retail dealer or consumer.

Under § 7–26–3, the legal incidence or the responsibility for payment of the tax falls on the taxpayer who is the severer of the yellowcake.

The taxpayer is not an agent for collection. The amounts the taxpayer collected from its customers formed part of the sales price. In *Gurley v. Rhoden*, 421 U.S. 200, 95 S.Ct. 1605, 44 L.Ed.2d 110 (1975), the Court was concerned with the issue of the imposition of tax on the gross proceeds of the gasoline sellers retail sales. The taxpayer added the amount of the state excise tax and federal excise tax to his pump price. He argued that it was unconstitutional for the gross proceeds tax to be computed on the amounts he received from his customers for the other two taxes. The court held that the taxpayer could prevail only if the legal incidence of the excise taxes is not upon petitioner but upon the purchaser-consumer. The court determined that the legal incidence of both taxes was on the taxpayer and was therefore not unconstitutional for the state to impose its tax on the entire amount received by the taxpayer.

The taxpayer in the case at bar argues that the severance tax attaches before it bills the reimbursed tax to the buyers. The taxpayer interprets the imposition of tax at the time of severance of the material. This contention is inconsistent with the plain meaning of the Act. Section 7–26–3 states that "[f]or the privilege of severing natural resources, there is imposed on any severer of natural resources in New Mexico an excise tax on the taxable value . . . ." Using the definition of "taxable value" set out in § 7–26–4(F), we conclude that the legal incidence or the responsibility for payment of the severance tax attaches at the time that the sale is made.

The taxable value as defined in § 7–26–4(F) is not ambiguous; it does not allow the deduction of any reimbursed tax which the taxpayer is attempting to deduct from the total amount of monies received or from the sales price. The decision of the department was not arbitrary or capricious, but was made in accordance with the facts and the law. The decision of the department is affirmed.

IT IS SO ORDERED.

HENDLEY and DONNELLY, JJ., concur.