CONSUMERS POWER COMPANY v. CORPORATION &
SECURITIES COMMISSION.

1. STATUTES—CONSTRUCTION.
   In construing one section of a statute, the statute must be
   construed to carry out the intention of the legislature, de-
   termined from the language used and the general purpose
   of the act.

2. SAME—EXECUTIVE CONSTRUCTION.
   If the language of a legislative enactment is ambiguous, the
   executive construction placed thereon by those charged
   with the enforcement of the act is entitled to careful con-
   sideration, although not controlling on the courts.

3. SAME—CONSTRUCTION OF REVENUE STATUTES.
   In doubtful cases, revenue statutes must be construed against
   the government and in favor of the taxpayer.

4. TAXATION—BURDEN OF PROOF.
   The burden is always on the State to establish the necessary
   facts to sustain a claim for taxes or revenue.

5. CORPORATIONS—FRANCHISE FEES—AUTHORIZATIONS—INCREASES—
   RESTORATION.
   Where a corporation has paid its franchise fee on a certain
   amount of stock and subsequently the authorized capital
   stock was reduced and thereafter changed or restored to an
   amount not in excess of that on which the fee had been
   previously paid, the corporation is not subject to a fee
   for the amount of such restoration or resumption of author-

REFERENCES FOR POINTS IN HEADNOTES
[1] 50 Am Jur, Statutes, §§ 303, 307.
[2] 50 Am Jur, Statutes, § 219; 51 Am Jur, Taxation, § 317.
[3] 51 Am Jur, Taxation, § 316.
[4] 51 Am Jur, Taxation, § 994.
[5] 51 Am Jur, Taxation, §§ 817 *et seq.*, 831 *et seq.*
[6] 14 Am Jur, Costs, § 91.

ization, under statute specifically requiring payment of fee based on authorizations and increases but silent as to decreases (CL 1948, § 450.303).

6. COSTS—PUBLIC QUESTION—CONSTRUCTION OF REVENUE ACT—PRECEDENTS.

No costs are allowed in action in court of claims to recover additional franchise fee paid under protest where construction of corporation tax act is involved and application made of statute involved is not shown to have had a precedent either in courts of this State or by virtue of executive construction of the act, the question involved being a public one (CL 1948, § 450.303).

Appeal from Court of Claims; Breakey (James R., Jr.), J., presiding. Submitted October 13, 1949. (Docket No. 37, Calendar No. 44,494.) Decided January 9, 1950.

Claim by Consumers Power Company, a corporation, against State of Michigan and Michigan Corporation & Securities Commission for amount of franchise fee paid under protest. Judgment for plaintiff. Defendants appeal. Affirmed.

*N. B. Kelly,* for plaintiff.

*Stephen J. Roth,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Gregory H. Frederick* and *Meredith H. Doyle,* Assistants Attorney General, for defendants.

CARR, J. The material facts in this case are not in dispute. Plaintiff, a corporation organized under the laws of the State of Maine, filed a copy of its certificate of organization with the secretary of State of the State of Michigan on or about July 21, 1915, paid the statutory fee based upon the amount of its capital stock then authorized, and was admitted to carry on business within this State. From

time to time thereafter, prior to December 31, 1936, plaintiff increased its authorized capital stock, complying in each instance with the statutory requirements relating thereto, including the payment of prescribed franchise fees.

On the date mentioned, December 31, 1936, as defendants claim, or on or about February 1, 1937, as plaintiff alleges in its petition, an amendment to its articles of incorporation was filed with the Michigan corporation and securities commission,* showing an increase in authorized capital stock due to an increase in the number of shares of its preferred stock. As a result of such increase the total amount of authorized capital stock was $197,723,900. The amount of additional franchise fee required to be paid was determined by the commission at the sum of $25,995.95, which sum was paid. Thereafter, in April, 1937, a further amendment to the articles of incorporation was filed with the defendant commission, disclosing that plaintiff had reduced its authorized capital stock, following which action the defendant commission determined the total amount thereof to be $157,300,000. Such computation was based on 1,000,000 shares of preferred no par value stock, book value $100 a share, and 2,000,000 shares of common no par value stock, book value $28.65 a share.

No further change was made in the authorized capital stock of the plaintiff until on or about September 17, 1946, when it again amended its articles by increasing the number of shares of common stock to 6,000,000. Defendant commission found the book value of such stock to be $15.06 a share, and that, including the preferred stock, the authorized capital

---

* Powers and duties relative to organization, regulation and taxation of corporations, formerly vested in the secretary of State have been transferred to the corporation and securities commission, see CL 1948, § 451.3 (Stat Ann § 19.783).—REPORTER.

stock of plaintiff was then $190,360,000. This was determined to be an increase of $33,060,000 over and above the prior authorized capital stock, and the commission required plaintiff to pay a fee of one-half mill upon each dollar of such increase. Plaintiff paid the sum so fixed, $16,530, under protest and brought suit in the Michigan court of claims to recover. Following hearing judgment was rendered in plaintiff's favor, and defendants have appealed.

The action of the defendant commission of which plaintiff complains was taken under the provisions of PA 1921, No 85, § 3, as amended by PA 1945, No 154 (CL 1948, § 450.303 [Stat Ann 1947 Cum Supp § 21.203]). Said section reads in part as follows:

"Sec. 3. Every domestic corporation hereafter organized for profit, and every foreign corporation for profit hereafter applying for admission to do business within this State, shall at the time of filing its articles or applying for admission, as the case may be, pay to the Michigan corporation and securities commission, as an organization fee and for the privilege of exercising its franchises within this State, a sum equal to 1/2 mill upon the dollar for each dollar of the authorized capital stock of such corporation: Provided, That in case of a foreign corporation, such fee shall be computed upon that portion of its authorized capital stock represented by the portion of its property, both tangible and intangible, owned and/or used or to be used and business transacted in Michigan: And provided further, That in no case either as to a domestic or foreign corporation shall the organization fee be less than $25.00: And provided further, That every corporation heretofore or hereafter incorporated under the laws of the State of Michigan which shall thereafter increase its authorized capital stock, and every foreign corporation heretofore or hereafter admitted to do business in this State, which shall thereafter increase its authorized capital stock, shall pay a sum equal to 1/2

mill upon each dollar for each and any increase in its authorized capital stock: And provided further, That in case of a foreign corporation, such fee shall be computed upon that portion of its authorized capital stock represented by the portion of its property, both tangible and intangible, owned and/or used or to be used and business transacted in Michigan: And provided further, That whenever a foreeign corporation which has heretofore or hereafter been admitted to do business in Michigan shall increase the proportion of its authorized capital stock represented by property owned and/or used and business transacted in this State, it shall pay a sum equal to 1/2 mill upon each dollar of the increased proportion of its authorized capital stock represented by its property, both tangible and intangible, owned and/or used and business transacted in Michigan."

In substance the issue presented is whether, under the provisions of the statute quoted above, the franchise fee liability of a corporation increasing its authorized capital stock is to be determined with reference to the amount of such stock immediately prior to such increase or with reference to the previous highest amount on which the franchise fee has been collected by the State. Plaintiff insists, as set forth in the petition filed by it in the court of claims, that:

"There was no actual increase in the amount of its aggregate authorized capital stock over and above the total of its authorized capital stock existing as of February 1, 1937, the date of the last increase thereof and the date of its highest authorized capitalization, and therefore no fee or tax was payable, within the scope and meaning of CL 1929, § 10138, as amended,* or any other statute of said State; that petitioner had prior to September 17, 1946, paid

* As amended by PA 1945, No 154, this is CL 1948, § 450.303.— Reporter.

franchise fees or charges upon a total authorized capital stock substantially in excess of the total amount of petitioner's authorized capital stock as of September 17, 1946; that such payment made as aforesaid on September 17, 1946, was without consideration, and was made by petitioner involuntarily and under legal duress."

It is the position of the defendant commission that, irrespective of the amount of authorized capital stock upon which the corporation had previously paid, the statute requires the payment of a further franchise fee on any increase over the amount of such stock immediately preceding the increase in question.

In deciding the matter the statute must be construed to carry out the intention of the legislature, determined from the language used and the general purpose of the act. *Municipal Investors Ass'n* v. *City of Birmingham,* 298 Mich 314, affirmed, 316 US 153 (62 S Ct 975, 86 L ed 1341). If the language of a legislative enactment is ambiguous the executive construction placed thereon by those charged with the enforcement of the act is entitled to careful consideration, although not controlling on the courts. *People, ex rel. Simmons,* v. *Anderson,* 198 Mich 38; *City of Hazel Park* v. *Municipal Finance Commission,* 317 Mich 582; *Howard Pore, Inc.,* v. *State Commissioner of Revenue,* 322 Mich 49 (4 ALR2d 1041). This Court has also repeatedly recognized the rule that in doubtful cases revenue statutes must be construed against the government and in favor of the taxpayer. *Standard Oil Co.* v. *State of Michigan,* 283 Mich 85; *Metzen* v. *Department of Revenue,* 310 Mich 622; *F. M. Sibley Lumber Co.* v. *Department of Revenue,* 311 Mich 654; *Waterways Navigation Company* v. *Corporation & Securities Commission,* 323 Mich 153. The nature of the fee imposed by the statute under consideration here was

before this Court in *Montgomery Ward & Co.* v. *Corporation & Securities Commission,* 312 Mich 117. See, also, *Union Steam Pump Sales Co.* v. *Secretary of State,* 216 Mich 261.

Counsel for defendants insist that for many years past the construction for which they contend has been given to the statute in question by those concerned with its application and enforcement. However, we do not find in the record any specific proof supporting such claim. There is no showing that any other corporation has been required, since the enactment of the statutory provision in question, to make payment on an increase in authorized capital stock in an instance where the required fee has been paid previously by the corporation on an amount greater than the authorized capital stock following such increase. If the argument of counsel has reference to matters of opinion rather than actual applications of the statute, it would seem that there have been divergent views. Our attention is called to an opinion given by a former attorney general, under date of June 6, 1939 (Report of OAG 1939–1940, p 115), in which the following question was considered and the answer indicated given:

"Articles of incorporation were filed and franchise fee paid for an authorized capital of $250,000 consisting of 12,500 shares of common stock of the par value of $10 per share, and 12,500 shares of preferred stock with a par value of $10 per share. Subsequently, the preferred stock which had been issued was retired and the only stock of the company outstanding was 10,000 shares of common. The company has now submitted a certificate of amendment changing its capital structure to 125,000 shares of Class A, par value $1, and 125,000 shares of Class B, par value $1. The 10,000 shares, amounting to $100,000, of outstanding common stock is being turned in for 100,000 shares of Class A stock on the

basis of 10 shares of Class A, $1 stock, for 1 share of the old common, $10 stock.

"'Question: Whether the stated facts show any increase in capital requiring the payment of a franchise fee, and, if so, as to the amount of increase upon which the fee should be computed.'

"It is our opinion that the stated facts do not show an increase in the authorized capital stock of the corporation, and for this reason no fee should be required."

The supreme court of Pennsylvania in *Commonwealth* v. *Independence Trust Company*, 233 Pa. 92 (81 A. 928), had occasion to interpret a statute containing a provision analogous to that involved in the case at bar. Such statute made it the duty of a corporation increasing its capital stock to pay a fee, designated as a bonus, on the amount of such increase. The defendant in the case was originally incorporated for $1,000,000 and had paid the fee on that sum. Subsequently the capital stock was decreased or withdrawn so that only $75,000 remained outstanding. Thereafter there was an increase in the capital stock to $2,000,000, and the State insisted on the right to collect the fee on the difference between the amount of capital stock following such increase and the amount outstanding immediately prior thereto. In rejecting such claim the court said:

"As the situation stands the commonwealth has received a bonus on $1,000,000, and if now permitted to collect a bonus on an additional $1,925,000, it will then have been paid a bonus on $2,925,000, although in fact the corporation never issued more than $2,-000,000 of capital stock. The position of the commonwealth in this respect is technical and entirely ignores the equities of the case. The evident intention of the legislature was to impose a bonus charge upon the amount of capital stock and not to exact

more than the total capitalization warrants. When an incorporated company pays a bonus upon the amount of its original capital, and upon any subsequent increases thereof, the requirements of the law have been satisfied. The burden is always on the commonwealth to establish the necessary facts to sustain a claim for taxes or revenue. Upon the record here presented there is a total capitalization of $2,000,000, with a bonus paid on $1,000,000, and we see no occasion either in law or equity to require the payment of a bonus on $2,925,000, which is $925,000 more capital stock than the company ever issued. The record does not give any information as to the steps taken to reduce or increase the amount of capital stock, nor is it necessary for the purposes of this case that it should, but it does show the amount of stock now authorized to be issued and the amount of the original capital upon which a bonus was paid. The difference is the amount on which no bonus has been paid, or at least the full bonus of one-third of one per centum has not been paid. The company therefore owes the commonwealth what remains unpaid on the additional capital stock of $1,000,000 at the rate of one-third of one per centum."

Based on the holding in the Pennsylvania case, *supra,* it is said in 11 Fletcher, Cyclopedia on Corporations (Perm ed), p 208:

"If the fee is paid on the amount of capital stock for which the company was originally incorporated, and thereafter the amount of stock is decreased, but subsequently is increased in excess of the original amount, the fee on the increase is to be based on the excess over and above the original amount of capital stock, rather than on the excess over the decreased amount."

The decision was also cited with approval by the supreme court of Kentucky in *Talbott, Auditor of Public Accounts,* v. *Louisville Trust Co.,* 259 Ky 75 (82 SW2d 219).

Defendants call attention in their brief to the case of *Butler Brothers* v. *John C. Martin, State Treasurer*, 369 Ill 151 (15 NE2d 843). There the plaintiff corporation had made payment of fees based upon authorized capital. Thereafter it amended its charter by reducing the capital from $30,000,000 to $15,-000,000, accomplishing the result by reducing the par value of the shares. Following such reduction it had outstanding 1,138,110 shares of stock of the par value of $10 each, or total outstanding capital stock of $11,381,100. Subsequent to this action the statute was amended in such manner as to provide for the payment of fees on issued capital stock rather than authorized capital. Following the change in the statute, appellant increased its authorized capital stock from $15,000,000 to $30,000,000 and issued 285,000 shares of convertible preferred stock for a consideration of $8,835,000. The State insisted on its right to collect an additional license fee on the basis of such stock issue, and its position was sustained by the court. It will be noted that a change in the statute was involved, a matter to which the court in its opinion called attention in distinguishing the Pennsylvania case above cited. Because of the different factual situation involved, the holding of the Illinois court cannot be regarded as in point.

In his opinion filed in the case at bar the trial judge said in part:

"Where the organization fee has been *once* paid on a certain amount of stock and subsequently the authorized capital was reduced and thereafter changed or restored to a figure not in excess of the amount on which the fee had been previously paid it would amount to the collection of the fee more than once if on every such restoration the fee were charged as the defendants contend. The court is of the opinion that the legislature intended only one

fee to be paid on any certain amount of authorized stock and did not intend that a fee should be repeated in part on every restoration to a previous level or amount for which a fee had been previously paid. What happened herein amounts to a 'restoration' or 'resumption,'—not an 'increase.' "

We agree with the conclusion of the circuit judge as set forth in the language quoted. It is in accord with the language of the statute. It will be noted that said statute requires the initial payment of a franchise fee based on the authorized capital stock of the corporation. No specific references are made to decreases, but a further payment is required for each and any increase. We think that the form of expression suggests that the legislature had reference to each increase over and above the amount of authorized capital stock on which the franchise fee had previously been collected. Had the legislature intended to require that under circumstances like those involved in the case at bar the corporation should be required to pay the franchise fee a second time on a portion of its authorized capital stock, we think that appropriate language would have been used to clearly express such intent. The application of the principle above referred to, that revenue measures shall be construed if not specific in their provisions in favor of the taxpayer, requires such conclusion.

The judgment of the court of claims is affirmed. The question involved being public in nature, no costs are allowed.

BOYLES, C. J., and REID, NORTH, DETHMERS, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.