THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK v
INSURANCE BUREAU

Docket No. 58425. Submitted July 13, 1982, at Lansing.—Decided
November 17, 1982. Leave to appeal applied for.

The Mutual Life Insurance Company of New York (MONY), a
New York insurance company licensed to do business in Michi-
gan, provides as part of its employee fringe benefit package to
its employees and field underwriters insurance benefits for
death, illness, disability and medical benefits. These benefit
plans are participatory, with a bulk of the expenses being born
by MONY; however, a portion of the expenses are born by
employee payroll deductions. The Insurance Bureau, being
charged with determining and collecting the premium tax
under the Insurance Code, notified MONY that the employer
and employee contributions to this insurance coverage under
the employee benefit program were part of the company's gross
premiums which were subject to taxation. When MONY indi-
cated that such contributions had not been included as gross
premiums for the purpose of computing the Michigan premium
tax, the bureau sent a tax delinquency notice. MONY com-
menced in Ingham Circuit Court an action for declaratory
judgment against the Insurance Bureau, the Michigan Depart-
ment of Commerce and the Commissioner of Insurance. James
T. Kallman, J., entered a declaratory judgment which held that
the contributions of the employees and field underwriters was
subject to the tax but the contribution of the insurance com-
pany was not subject to the tax. MONY appeals. *Held:*

The contributions of the employees and field underwriters to
these insurance benefits under the employee benefit plan are
not properly included as part of the gross premiums upon
which the Michigan insurance privilege tax is to be based.
Since such contributions are not subject to taxation, it is

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 73 Am Jur 2d, Statutes §§ 145, 146.
[2] 71 Am Jur 2d, State and Local Taxation § 8.
[3] 2 Am Jur 2d, Administrative Law § 233 *et seq.*
[4] 73 Am Jur 2d, Statutes § 164.
[5, 6] 71 Am Jur 2d, State and Local Taxation §§ 432, 507-509.

unnecessary to consider whether the provisions of the Employee Retirement Income Security Act of 1974 prevent the State of Michigan from taxing employee contributions in a self-administered employee benefit plan.

Reversed.

ALLEN, P.J., dissented. He would hold that such employee contributions are properly included as gross premiums subject to taxation, notwithstanding the fact that the company makes no profit on this coverage. He would affirm.

### OPINION OF THE COURT

1. STATUTES — JUDICIAL CONSTRUCTION — LEGISLATIVE INTENT.

The object of statutory construction is to ascertain the intent of the Legislature in enacting the provision; to ascertain that intent, the specific language of the statute itself should be examined.

2. STATUTES — JUDICIAL CONSTRUCTION — TAXATION.

Provisions of statutes relating to taxation should, in doubtful cases, be construed against the taxing authority; however, such statutes should be reasonably construed with a view to carrying out the legislative purpose.

3. STATUTES — JUDICIAL CONSTRUCTION — ADMINISTRATIVE INTERPRETATIONS.

Courts, in construing statutes, should give deference to the interpretation given the provision by an administrative agency where the Legislature has properly delegated to that agency the authority to carry out the mandates of the statutes; however, the courts are not bound by the interpretation given by the agency.

4. STATUTES — JUDICIAL CONSTRUCTION — ATTORNEY GENERAL OPINIONS.

Opinions of the Attorney General are not binding on the Court of Appeals.

5. TAXATION — INSURANCE COMPANIES — GROSS PREMIUMS.

The amounts contributed by the Michigan employees and field underwriters of a foreign insurance company to purchase insurance benefits as part of an employee benefit plan are not part of the gross premiums which form the basis for the computation of Michigan taxes where such insurance plan is self-administered on a nonprofit and nonactuarial basis (MCL 500.440, 500.441; MSA 24.1140, 24.1441).

6. Taxation — Insurance Companies — Gross Premiums.

> *The amounts paid by Michigan employees and field underwriters of a foreign insurance company for insurance benefits which are part of an employee benefit program are subject to the Michigan tax on gross premiums, even though the insurance company makes no profit on that insurance program, since the Michigan tax is not based upon the corporate profits of the foreign insurance company but rather upon the gross premiums collected in the state (MCL 500.440 et seq.; MSA 24.1440 et seq.).*

*Miller, Canfield, Paddock & Stone* (by *Samuel J. McKim, Carl H. Van Ende,* and *John D. Rayis),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Harry G. Iwasko, Jr.,* and *William A. Chenoweth,* Assistants Attorney General, for defendants.

Before: Allen, P.J., and Cynar and R. B. Martin,* JJ.

Cynar, J. The Mutual Life Insurance Company of New York (MONY) appeals as of right from a declaratory judgment entered on June 8, 1981.

The facts of this case are not in dispute. MONY is a mutual life insurance company, incorporated in the State of New York and licensed to engage in the insurance business in Michigan. As part of its employee fringe benefit package, MONY provides its employees and field underwriters with insurance benefits for death, illness, disability, and medical expenses. The plans constitute "employee welfare benefit plans" under § 3(1) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 USC 1001 *et seq.,* and involve contrac-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tual relations of such a nature that they meet the definition of insurance contracts. The benefit plans are participatory, with the bulk of the expenses being borne by MONY. The employees' and field underwriters' share of the expenses are established by the fringe benefit plans and are generated by payroll deductions. Any employee or field underwriter may terminate participation in these plans and withdraw his authorization for payroll deductions. The portion of the costs borne by MONY varies from year to year because MONY contributes the difference between the actual annual cost of the benefit plans and the aggregate cost portion borne by its employees and field underwriters. Computation of the cost of these benefit plans is different from the basis on which MONY computes the cost of commercially sold insurance providing similar benefits because there is no allocation for MONY's expenses or profit.

The Commissioner of Insurance (bureau) is charged with determining and collecting the premium tax under §§ 440-445 of the Insurance Code of 1956, MCL 500.440 *et seq.;* MSA 24.1440 *et seq.* The premium tax is a tax imposed on foreign insurers as a condition precedent to the privilege of conducting insurance business within the State of Michigan. The tax is two percent of each insurer's gross premiums. In 1965, the Attorney General opined that employer and employee contributions to the cost of providing group life insurance for employees of insurance companies constituted gross premiums within the meaning of §§ 440 and 441 and was, therefore, taxable. OAG, 1965-1966, No 4431, pp 61, 66-67 (April 19, 1965). On September 10, 1965, a letter was sent to all insurers, informing them of the opinion and its applicability to computation of the 1965 premium tax. On Feb-

ruary 6, 1975, the bureau notified MONY that its records indicated the existence of life, accident, and health plans for the insurer's employees and field underwriters. MONY notified the bureau on February 19, 1975, that neither its portion nor the employees' portion of the benefit plans had been included as gross premiums for the purpose of computing the premium tax. The bureau sent a tax delinquency notice to MONY on March 15, 1975.

On April 13, 1976, MONY initiated a declaratory judgment action. MONY maintained that the premium tax was inapplicable to portions of the costs of benefit plans borne by either itself or its employees and field underwriters. The bureau contended that both portions of the costs were subject to the premium tax. On February 8, 1980, the trial court issued an opinion, holding that the premium tax was applicable only to the contributions made by MONY's employees and field underwriters. Oral arguments were held relative to MONY's motion for reconsideration on August 7, 1980. At that time, the bureau conceded that the trial court was correct in determining that MONY's contributions to the employee benefit plans were not includable in the computation of gross premiums. On October 14, 1980, the court affirmed its earlier opinion. Oral argument was heard on November 19, 1980, regarding the issue of whether ERISA pre-empted application of the premium tax in the instant case. A third opinion was issued on December 9, 1980; the trial court held that the State of Michigan was not pre-empted by the federal government from regulating insurance fringe benefit policies of employee benefit plans. The court issued a declaratory judgment on June 8, 1981. We reverse.

In construing a statute, the object is to ascertain the legislative intent in enacting the provision. *Smith v City Comm of Grand Rapids*, 281 Mich 235, 240; 274 NW 776 (1937). The specific language of the statute itself should be examined. *Kalamazoo City Education Ass'n v Kalamazoo Public Schools*, 406 Mich 579, 603; 281 NW2d 454 (1979). In doubtful cases, revenue statutes must be construed against the taxing authority. *Ecorse Screw Machine Products Co v Corp & Securities Comm*, 378 Mich 415, 418; 145 NW2d 46 (1966). However, revenue statutes should receive a reasonable construction with a view to carrying out the legislative purpose. *In re Detroit & Windsor Ferry Co*, 227 Mich 143, 146; 198 NW 725 (1924). Where the Legislature has properly delegated authority to an administrative agency to carry out the mandates of a statute, the courts should give deference to the agency's interpretation of the provision, although they are not bound thereby. *Judges of 74th Judicial Dist v Bay County*, 385 Mich 710, 727-729; 190 NW2d 219 (1971); *Grunewald v Dep't of Treasury*, 104 Mich App 601, 607-608; 305 NW2d 269 (1981), *lv den* 412 Mich 875 (1981).

The premium tax on foreign insurers is provided for in §§ 440-445 of the Insurance Code.[1] At issue is

[1] In relevant part, § 440 states:

"(1) Every foreign insurer of the classes herein enumerated, admitted to do and doing insurance business in this state·as a condition precedent to the privilege of doing business, shall pay to the commissioner for prompt deposit with the state treasurer at such times and in the manner required by section 443, subject to the retaliatory provisions in section 476, a tax upon its business written in this state under the authority of the commissioner for the year ending December 31, computed as follows:

"(a) Life insurers, a tax of 2% on the gross premiums excluding considerations for original annuities.

\* \* \*

"(2) These specific taxes shall be in lieu of all other taxation, whether state or local, excepting for real estate owned by insurers

whether amounts contributed by MONY's employees to its self-administered benefit plans constitute "gross premiums" subject to the premium tax. This is a question of first impression in Michigan.

The premium tax is a privilege tax, imposing the tax burden as a condition precedent for a foreign insurer to conduct business in this state. The tax is measured as a percentage of the insurer's gross premiums from business written within the state. MCL 500.440; MSA 24.1440.

MONY contends that the issuance of insurance contracts to its employees and field underwriters on a nonprofit, nonactuarial basis as part of employee benefit plans does not constitute the carrying on of insurance business within the contemplation of the premium tax. Accordingly, it contends that employee contributions to the benefit plans are not gross premiums. The bureau argues that it is totally unrealistic to view only the sale of policies to MONY's usual customers as an exercise of its franchise. Thus, the bureau contends that the employee contributions are includable in MONY's gross premiums.

within this state and securities deposited herein and excepting for tangible personal property owned or held for investment purposes by insurers within this state unless exempted under the general tax laws of this state."

Section 441 provides:
"The taxes on premiums from insurers shall be upon all premiums, whether upon business written or renewed, which are received by any insurer or by any person acting as agent therefor, both upon policies issued by agents in this state, or policies issued at the office of the insurers upon application of subagents or others, or for any individuals or association of individuals, not incorporated or authorized by the laws of this state, to effect insurance against fire, inland, marine, life, casualty, title or other risks, or which are received by any person for such insurer or agent, or are agreed to be paid for any insurance effected, or agreed to be effected or procured by such insurer or agent, or against fire, inland, marine, life casualty, title or other risks, although such companies, associations or individuals may be incorporated or authorized for that purpose by the law of any other state of the United States, or of any foreign government."

MONY supports its position by reference to several foreign cases. In *Mutual Life Ins Co of New York v New York State Tax Comm,* 32 NY2d 348; 298 NE2d 632 (1973), MONY sought review of the State Tax Commission's denial of its application for a refund. This case is significant because it involved the same insurer, a substantially similar tax statute and similar participatory benefit plans. At issue was whether the contributions by *both* MONY and its employees towards the cost of life and health insurance benefit plans were "gross direct premiums" subject to the state's premium or franchise tax. The court determined that the maintenance by an insurer of a benefit program for its employees on a nonprofit basis, solely as an incident of its role as an employer, does not constitute the doing of insurance business so as to subject it to a premium tax.[2] In partial dissent, Judge Gabrielli agreed that the amount of premiums waived or contributed by MONY was not taxable. However, the minority opined that the cash premiums paid by the employees in return for insurance policies constituted the doing of insurance business, notwithstanding the lack of a profit motive. Moreover, the minority noted that MONY was only able to issue the insurance con-

---

[2] See, also, *State ex rel Farmer v Monsanto Co,* 517 SW2d 129 (Mo, 1974) (noninsurer-employer's payments of sickness and medical benefits to employees do not constitute transaction of insurance business); *California-Western States Life Ins Co v State Board of Equalization,* 151 Cal App 2d 559; 312 P2d 19 (1957) (contributions of insurer-employer's employees to voluntary retirement plan not subject to gross premium tax); *State Tax Comm v John Hancock Mutual Life Ins,* 341 Mass 555; 170 NE2d 711 (1960) (insurer-employer's contributions to employee retirement benefit plan not subject to excise tax); *Williams v Massachusetts Mutual Life Ins Co,* 221 Tenn 508; 427 SW2d 845 (1968) (insurer-employer's contributions to employee benefit plan not subject to premium tax); *Danna v Comm'r of Ins,* 228 So 2d 708 (La App, 1969) (insurer-employer's and employee's contributions to group policies not direct premium subject to annual license tax).

tracts under the exercise of its franchise privilege. Accordingly, Judge Gabrielli, joined by Judges Breitel and Wachtler, would have levied the premium tax against only the share of the premiums borne by the employees.

In Michigan, the only published work on the exact question raised by MONY is OAG, 1965-1966, No 4431, pp 61, 66-67 (April 19, 1965). There, the Attorney General was asked whether company and employee contributions for employee group insurance policies issued by the insurer-employer were allowable deductions from gross premiums for purposes of computing the premium tax. The Attorney General opined that the funds employed to purchase the group insurance contracts constituted gross premiums. Of course, opinions of the Attorney General are not binding on this Court. *David Walcott Kendall Memorial School v Grand Rapids,* 11 Mich App 231, 237; 160 NW2d 778 (1968), *lv den* 381 Mich 765 (1968).

As previously discussed, the tax in question is imposed on foreign insurers for the privilege of doing insurance business in this state. The term "business" generally connotes the carrying on of a commercial or mercantile activity as a means of livelihood. In providing the participatory benefit plans to its employees and field underwriters, MONY is not engaged in the exercise of doing insurance business within the common meaning of the phrase. This is supported by the stipulation that MONY provides the insurance contracts on a nonprofit, nonactuarial basis. The plans are a negotiated benefit incident to the employer-employee relationship. For providing the benefits, the employer expects to maintain a harmonious working environment, as well as to attract and retain key employees. Because the policies were offered

on a nonprofit, nonactuarial basis incident to the employer-employee relationship as opposed to being offered in the furtherance of MONY's profit-making insurance business within the state, the contributions of MONY's employees and field underwriters should not be included in the calculation of gross premiums subject to the premium tax.

Admittedly, this is a close question, as evidenced by the 4-3 split in *Mutual Life Ins Co of New York.* While the approach of the minority is intriguing, it ignores the employer-employee relationship providing the impetus behind establishment of the benefit plans. Moreover, as the applicability of the premium tax to employee contributions is in doubt, a construction of the statute towards MONY's position is favored. See *Ecorse Screw Machine Products Co, supra.*

The bureau's contention that MONY's activities relative to the employee benefit plan are either within the ambit of its franchise to engage in the insurance business or illegal is unpersuasive. Incident to its role as an employer, MONY is permitted to engage in activities that do not amount to doing insurance business within the contemplation of the premium tax statute.

Because we conclude that the amounts contributed by MONY's employees and field underwriters towards their benefit plans, self-administered by an insurer on a nonprofit and nonactuarial basis, should not be included in computation of gross premiums subject to the premium tax on insurance business written by foreign insurers, we do not reach MONY's second issue. At this point it would be premature to decide whether ERISA preempts this state from taxing employee contributions to MONY's self-administered employee benefit plan.

Reversed.

R. B. Martin, J., concurred.

Allen, P.J. *(dissenting).* I cannot agree that the premiums paid in cash by the company employees are not taxable under the statute. The tax, MCL 500.440 *et seq.;* MSA 24.1440 *et seq.,* is a tax on premiums imposed on foreign insurance companies for the privilege of conducting an insurance business in Michigan. To my mind, collecting premiums in return for insurance benefits provided company employees is purely and simply conducting an insurance business. MONY would be unable to furnish insurance to its employees absent the franchise to conduct insurance business in the state, and, thus, the amounts paid by the employees result from doing business in the state.

The majority concludes that the fact that the company makes no profit on this facet of its business somehow excludes the company from the tax. But the tax is not calculated on corporate profits. Instead, the tax is based on doing business in the state. I agree with the majority that the issue is close as evidenced by the 4-3 decision in *Mutual Life Ins Co of New York v New York State Tax Comm,* 32 NY2d 348; 298 NE2d 632 (1973). However, I come down on the side of Judge Gabrielli's minority opinion in that case. I think it contains the better reasoning and I incorporate it by reference in this dissent. I would affirm.