MUTUAL LIFE INSURANCE COMPANY OF NEW YORK v
INSURANCE BUREAU

Docket No. 70677. Argued December 17, 1985 (Calendar No. 4).—
Decided April 4, 1986. Rehearing denied 425 Mich 1202.

The Mutual Life Insurance Company of New York, a foreign
company doing business in Michigan, brought an action in the
Ingham Circuit Court against the Insurance Bureau, the De-
partment of Commerce, and the Commissioner of Insurance,
seeking a declaration that payments made by certain of its
employees and field underwriters who participated in an em-
ployee-benefit plan under the federal Employee Retirement
Income Security Act should not be included as gross premiums
for the purpose of computing Michigan premium tax. The
court, James T. Kallman, J., held that the contributions by the
employees were subject to tax, but that the contribution by
Mutual Life was not. The Court of Appeals, CYNAR and MAR-
TIN, JJ. (ALLEN, P.J., dissenting), reversed (Docket No. 58425).
The defendants appeal.

In an opinion by Justice BRICKLEY, joined by Chief Justice
WILLIAMS and Justices LEVIN and BOYLE, the Supreme Court
*held:*

Employee contributions toward a participatory employee-ben-
efit plan provided by an employer-insurer are taxable premi-
ums within the meaning of §§ 440 and 441 of the Insurance
Code even though insurance provided as part of the plan was
supplied by the employer-insurer on a nonprofit, nonactuarial
basis.

1. The premium tax applicable to foreign life insurance
companies is a tax levied as a condition precedent to, and in
exchange for, the privilege of doing business in Michigan. The
tax relates directly to the exercise of that privilege. The Insur-
ance Code specifically and unambiguously provides that the tax

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] Am Jur 2d, Insurance §§ 38, 39, 45, 49, 880, 1842 *et seq.*
Termination of employee's individual coverage under group policy
for nonpayment of premiums. 22 ALR4th 321.
See also the annotations in the ALR3d/4th Quick Index under
Group Insurance; Insurance.

is to be paid upon all gross premiums collected from policies written within Michigan. Where legislative intent can be discerned from the express language of a statute, no further interpretation is warranted.

2. When the plaintiff furnished its own insurance to its employees as part of a negotiated benefit plan, it ceased to act as an employer and began to act as an insurer. Accordingly, the premiums it received from its employees are just as taxable as premiums paid by employees of other companies sold insurance as part of an employee-benefit package. Absent a franchise to do business in Michigan, the plaintiff would be unable to furnish insurance to its employees. Thus, the amounts paid by the employees result from doing business in Michigan.

3. The fact that the plaintiff provided insurance to its employees on a nonprofit, nonactuarial basis incident to an employer-employee relationship does not negate its doing business in Michigan within the meaning of the gross premiums tax statute. Section 440 does not impose a gross profits tax, but, rather, a tax on gross premiums—the less premiums received, the less tax liability. The fact that the plaintiff, in selling insurance to its own employees, did not collect its share of the cost of the insurance benefits from itself—and thereby paid no taxes on the share of the premiums it did not charge itself—does not excuse it from paying taxes on those premiums collected from its employees as consideration for the insurance it provides them.

Reversed.

Justice RILEY, joined by Justice CAVANAGH, dissenting, stated that the contributions by the plaintiff's employees and field underwriters should not be included in the calculation of gross premiums subject to the premium tax.

A premium tax applicable to a foreign life insurance company is not a gross-profits tax, but rather is a tax levied as a condition precedent to, and in exchange for, the privilege of doing business in the taxing state. In Michigan, the tax is levied directly and solely on the part of the foreign insurer's gross premiums generated from its business in Michigan—the amount of gross premiums received from persons who have bought policies in the regular course of business. The most reasonable construction of the language of the section of the Insurance Code which imposes the tax is that the premium tax may be imposed only on premiums received in connection with the business of writing or renewing insurance policies. Thus, the contributions of the plaintiff's employees and field under-

writers toward employee-benefit programs should not be included in the tax base upon which the premium tax is levied.

Justice ARCHER took no part in the decision of this case.

121 Mich App 386; 328 NW2d 638 (1982) reversed.

OPINION OF THE COURT

1. INSURANCE — TAXATION — PREMIUM TAX.

Premiums collected by a foreign insurer from its employees for insurance provided as part of an employee-benefits package are premiums within the meaning of the Insurance Code and are subject to premium tax (MCL 500.440, 500.441; MSA 24.1440, 24.1441).

DISSENTING OPINION BY RILEY, J.

2. INSURANCE — TAXATION — PREMIUM TAX.

*Contributions by employees and field underwriters of a foreign insurance company for insurance benefits as part of an employee benefit program should not be includable as part of the company's gross premiums, subject to premium tax (MCL 500.440[1]; MSA 24.1440[1]).*

*Miller, Canfield, Paddock & Stone* (by *Samuel J. McKim, III, P.C., Carl H. von Ende, Robert F. Rhoades,* and *Nanci Wolf Freedman*) for the plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Harry G. Iwasko, Jr.,* and *William A. Chenoweth,* Assistant Attorneys General, for the defendants.

BRICKLEY, J. In this case, we are asked to decide whether the Mutual Life Insurance Company of New York (MONY), a foreign insurance company doing business in Michigan, is required to pay a premium tax, imposed by MCL 500.440(1)(a); MSA 24.1440(1)(a), on employee contributions paid toward a group life insurance program MONY provides to its Michigan employees. We hold that the employee contributions toward their own participatory benefit plan, even though supplied by MONY

on a nonprofit, nonactuarial basis, constitute taxable premiums within the meaning of §§ 440 and 441 of the Michigan Insurance Code, and we therefore reverse the judgment of the Court of Appeals.

I

The facts are not in dispute, and they were aptly stated by the Court of Appeals, 121 Mich App 386, 388-390; 328 NW2d 638 (1982):

> MONY is a mutual life insurance company, incorporated in the State of New York and licensed to engage in the insurance business in Michigan. As part of its employee fringe benefit package, MONY provides its employees and field underwriters with insurance benefits for death, illness, disability, and medical expenses. The plans constitute "employee welfare benefit plans" under § 3(1) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 USC 1001 *et seq.,* and involve contractual relations of such a nature that they meet the definition of insurance contracts. The benefit plans are participatory, with the bulk of the expenses being borne by MONY. The employees' and field underwriters' share of the expenses are established by the fringe benefit plans and are generated by payroll deductions. Any employee or field underwriter may terminate participation in these plans and withdraw his authorization for payroll deductions. The portion of the costs borne by MONY varies from year to year because MONY contributes the difference between the actual annual cost of the benefit plans and the aggregate cost portion borne by its employees and field underwriters. Computation of the cost of these benefit plans is different from the basis on which MONY computes the cost of commercially sold insurance providing similar benefits because there is no allocation for MONY's expenses or profit.
>
> The Commissioner of Insurance (bureau) is charged with determining and collecting the pre-

mium tax under §§ 440-445 of the Insurance Code
of 1956, MCL 500.440 *et seq.;* MSA 24.1440 *et seq.*
The premium tax is a tax imposed on foreign
insurers as a condition precedent to the privilege
of conducting insurance business within the State
of Michigan. The tax is two percent of each insur-
er's gross premiums. In 1965, the Attorney Gen-
eral opined that employer and employee contribu-
tions to the cost of providing group life insurance
for employees of insurance companies constituted
gross premiums within the meaning of §§ 440 and
441 and was, therefore, taxable. OAG, 1965-1966,
No 4431, pp 61, 66-67 (April 19, 1965). On Septem-
ber 10, 1965, a letter was sent to all insurers,
informing them of the opinion and its applicability
to computation of the 1965 premium tax. On Feb-
ruary 6, 1975, the bureau notified MONY that its
records indicated the existence of life, accident,
and health plans for the insurer's employees and
field underwriters. MONY notified the bureau on
February 19, 1975, that neither its portion nor the
employees' portion of the benefit plans had been
included as gross premiums for the purpose of
computing the premium tax. The bureau sent a
tax delinquency notice to MONY on March 15, 1975.

On April 13, 1976, MONY initiated a declaratory
judgment action. MONY maintained that the pre-
mium tax was inapplicable to portions of the costs
of benefit plans borne by either itself or its em-
ployees and field underwriters. The bureau con-
tended that both portions of the costs were subject
to the premium tax. On February 8, 1980, the trial
court issued an opinion, holding that the premium
tax was applicable only to the contributions made
by MONY's employees and field underwriters. Oral
arguments were held relative to MONY's motion for
reconsideration on August 7, 1980. At that time,
the bureau conceded that the trial court was cor-
rect in determining that MONY's contributions to
the employee benefit plans were not includable in
the computation of gross premiums. On October
14, 1980, the court affirmed its earlier opinion.
Oral argument was heard on November 19, 1980,

regarding the issue of whether ERISA pre-empted application of the premium tax in the instant case. A third opinion was issued on December 9, 1980; the trial court held that the State of Michigan was not pre-empted by the federal government from regulating insurance fringe benefit policies of employee benefit plans. The court issued a declaratory judgment on June 8, 1981.

The Court of Appeals, in a two-to-one decision, reversed the ruling of the trial court. The Court reasoned:

As previously discussed, the tax in question is imposed on foreign insurers for the privilege of doing insurance business in this state. The term "business" generally connotes the carrying on of a commercial or mercantile activity as a means of livelihood. In providing the participatory benefit plans to its employees and field underwriters, MONY is not engaged in the exercise of doing insurance business within the common meaning of the phrase. This is supported by the stipulation that MONY provides the insurance contracts on a nonprofit, nonactuarial basis. The plans are a negotiated benefit incident to the employer-employee relationship. For providing the benefits, the employer expects to maintain a harmonious working environment, as well as to attract and retain key employees. Because the policies were offered on a nonprofit, nonactuarial basis incident to the employer-employee relationship as opposed to being offered in the furtherance of MONY's profit-making insurance business within the state, the contributions of MONY's employees and field underwriters should not be included in the calculation of gross premiums subject to the premium tax. [121 Mich App 394-395.]

We reverse the judgment of the Court of Appeals and remand the case to that Court for consideration of the question whether the Employee

Retirement Income Security Act, 29 USC 1001 *et seq.* (ERISA), preempts the tax imposed by the Insurance Code.

## II

A premium tax applicable to foreign life insurance companies is a tax levied as a condition precedent to, and in exchange for, the privilege enjoyed by a foreign insurance company of engaging in insurance business. Such taxes, frequently called excise, privilege, or franchise taxes, relate directly to the exercise of the privilege of conducting an insurance business in the taxing state.

MCL 500.440; MSA 24.1440, in imposing the premium tax, provides in pertinent part:

> Section 440. Every foreign insurer of the classes enumerated in this section, admitted to do and *doing insurance business* in this state as a condition precedent to the privilege of *doing business,* shall pay to the commissioner for prompt deposit with the state treasurer . . . *a premium tax upon its insurance carrier services written in* this state *under the authority of the commissioner* for the year ending December 31, computed as follows: (a) Life insurers, a tax of 2% on the gross premiums excluding considerations for original annuities. [Emphasis added.]

MCL 500.441; MSA 24.1441, in defining taxable premiums, provides:

> Section 441. The taxes on premiums from insurers shall be upon *all premiums,* whether *upon business written or renewed,* which are received by any insurer or by any person acting as agent therefor, both upon *policies issued by agents in this state or policies issued at the office* of the insurers, upon application of subagents or others,

or for any individuals or association of individuals, not incorporated or authorized by the laws of this state, to effect insurance against fire, inland, marine, life, casualty, title, or other risks . . . . [Emphasis added.]

These sections specifically and unambiguously state that a tax of two percent is to be paid upon all gross premiums collected from policies written within the State of Michigan.

When it negotiated a benefit plan with its employees, we agree with the Court of Appeals that MONY was acting as an employer. However, once the agreement was reached and the plaintiff decided to furnish its own insurance to its employees rather than to contract with an outside insurance company, as any non-insurance company employer would have done, it ceased to act as an employer and began to act as an insurer. Accordingly, the premiums received by plaintiff from its own employees are every bit as taxable as the share of premiums paid by the employees of another company to which MONY sold insurance as part of that company's employee-benefit package. As Judge ALLEN stated in his dissent in the Court of Appeals,

> MONY would be unable to furnish insurance to its employees absent the franchise to conduct insurance business in the state, and, thus, the amounts paid by the employees result from doing business in the state. [121 Mich App 396.]

We do not agree with the Court of Appeals rationale that, because the insurance plan was sold to MONY's employees on a "nonprofit, nonactuarial basis incident to the employer-employee relationship," *id.*, 395, MONY was not doing business in the state within the meaning of the gross premiums tax statute. Certainly, MONY could supply

insurance less expensively than if it were required to purchase it at a "regular price" from an outside insurance company, presumably saving money by providing its own insurance at cost, notwithstanding its claim that the plan was "nonprofit."

MCL 500.440; MSA 24.1440 is not a gross-profits tax. It is a tax on gross premiums, *i.e.,* the less premiums received, the less tax liability. The fact that the plaintiff, in selling insurance to its own employees, did not collect its share of the cost of the insurance benefits from itself—and thereby paid no taxes on the share of the premiums it did not charge itself—does not excuse it from paying taxes on those premiums collected from its employees as consideration for the insurance it provides them.

### III

We recognize that courts of other jurisdictions, construing similar provisions, have reached the opposite result. However, we find those cases to be sufficiently distinguishable that we do not feel constrained to follow them.

In *Mutual Life Ins Co of New York v New York State Tax Comm,* 32 NY2d 348; 345 NYS2d 475; 298 NE2d 632 (1973), the New York Court of Appeals interpreted a statute imposing a tax on "all gross direct premiums" received by domestic life insurance companies, and it held that employee contributions toward the life insurance policies supplied by the employer-insurer were not taxable.

In determining that the insurer's contributions to the costs of employee life and health insurance benefits were not subject to the New York premium tax, however, the New York Court of Appeals relied in part upon the longstanding administrative interpretation to that effect. After finding

that the employer's contributions were nontaxable, the court cursorily held that the nontaxability of employee contributions "follow[ed]." *Id.* at 354.

In Michigan, however, no such administrative interpretation of the nontaxability of insurer or employee cost exists. Indeed, in 1965 the Attorney General, noting the lack of prior precedent, concluded that both the employer's share and the employee's share of the cost of life insurance programs were taxable. OAG, 1965-1966, No 4431, p 63 (April 19, 1965). Pursuant to that opinion, the Insurance Commissioner notified all insurers of the state's position that the costs are taxable.

We also note that the New York *MONY* case was not unanimous. We find the better reasoning in the dissenting opinion, which states:

> The simple fact remains evident—that the employees pay cash premiums to the company for which, in return, they receive life insurance policies. This is doing insurance business, pure and simple. [*Mutual Life* at 355 (Gabrielli, J., dissenting).]

We likewise find the other cases cited by the Court of Appeals and the dissent distinguishable.[1]

### IV

The Court of Appeals correctly stated that, when a statute is ambiguous, it must be construed in favor of the taxpayer. *Ecorse Screw Machine Products Co v Corporation & Securities Comm,* 378

---

[1] See, *e.g., California-Western States Life Ins Co v State Bd of Equalization,* 151 Cal App 2d 559; 312 P2d 19 (1957) (state attempted to analogize group retirement plan to insurance contract); *State Tax Comm v John Hancock Mutual Life Ins Co,* 341 Mass 555; 170 NE2d 711 (1960) (retirement pension benefit plan; court found applicable statute ambiguous); *Metropolitan Life Ins Co v State Bd of Equalization,* 32 Cal 3d 649; 186 Cal Rptr 578; 652 P2d 426 (1982) (insurance company attempted to avoid premium tax by offering reduced-rate coverage whereby employer would pay all claims up to a "trigger point").

Mich 415, 418; 145 NW2d 46 (1966).[2] However, this statute is not ambiguous. It unequivocally states that "*all* premiums" are subject to the two percent tax. Accordingly, we do not have the latitude to engage in speculation as to whether the Legislature may have intended to exempt employee contributions to the insurance company/employer-provided insurance package. When the legislative intent can be discerned from the express language of a statute, no further interpretation is warranted. *Lamphere Schools v Lamphere Federation of Teachers,* 400 Mich 104, 110; 252 NW2d 818 (1977); *Kalamazoo Ed Ass'n v Kalamazoo Public Schools,* 406 Mich 579, 603; 281 NW2d 454 (1979).

Our conclusion in this regard is buttressed by the fact that the Legislature has specifically exempted premiums for group insurance policies for persons age sixty-five or over from the premium tax. MCL 500.3726; MSA 24.13726. The presence of the specific legislative exemption in MCL 500.3726; MSA 24.13726 should caution this Court against preempting the legislative power by creating a judicial exemption from the tax imposed by MCL 500.441; MSA 24.1441 on "*all premiums,* whether upon business written or renewed, which are received by any insurer or by any person acting as agent therefor . . . ." (Emphasis added.)

## V

The judgment of the Court of Appeals is reversed, and the case remanded to that Court for consideration of the ERISA question. We do not retain jurisdiction.

---

[2] See also *Ready-Power Co v City of Dearborn,* 336 Mich 519, 525; 58 NW2d 904 (1953); *Consumers Power Co v Corporation & Securities Comm,* 326 Mich 643, 648; 40 NW2d 756 (1950); *Standard Oil Co v Michigan,* 283 Mich 85, 88; 276 NW 908 (1937).

Williams, C.J., and Levin and Boyle, JJ., concurred with Brickley, J.

Riley, J. (*dissenting*). The Mutual Life Insurance Company of New York (mony) is a foreign insurance company doing business in Michigan. A foreign insurer is required to pay "a premium tax upon its insurance carrier services written in this state . . . ." The tax is two percent of "the gross premiums." MCL 500.440(1)(a); MSA 24.1440(1)(a). Mony provides a group life insurance program for its Michigan employees. The premiums for those policies are paid in part by mony and in part by the employees. The issues presented are: (1) whether the employee contributions toward their own participatory-benefit plan, supplied by mony on a nonprofit, nonactuarial basis, constitute taxable premiums within the meaning of §§ 440 and 441 of the Michigan Insurance Code;[1] and (2) whether the Employee Retirement Income Security Act (erisa)[2] would preempt the tax imposed by the code if construed to include such amounts received from employees.

## I

I would affirm the decision of the Court of Appeals. A premium tax applicable to foreign life insurance companies is a tax levied as a condition precedent to, and in exchange for, the privilege enjoyed by a foreign insurance company of engaging in the intrastate insurance business. Such taxes, frequently called excise, privilege, or franchise taxes, relate directly to the exercise of the privilege of conducting an insurance business in

---

[1] Originally, whether the employer's contributions were taxable was also at issue. The trial court held that they were not and that issue is no longer contested.

[2] 29 USC 1001 *et seq.*

the taxing state. The Michigan premium tax, while not an income tax as such, is measured by the amount of a foreign insurance company's business attributable to this state.

MCL 500.440; MSA 24.1440, in imposing the premium tax, provides in pertinent part:

> Section 440. Every foreign insurer of the classes enumerated in this section, admitted to do and *doing insurance business* in this state as a condition precedent to the privilege of *doing business,* shall pay to the commissioner for prompt deposit with the state treasurer . . . *a premium tax upon its insurance carrier services written in* this state *under the authority of the commissioner* for the year ending December 31, computed as follows: (a) Life insurers, a tax of 2% on the *gross premiums* excluding considerations for original annuities. [Emphasis added.]

MCL 500.441; MSA 24.1441, in defining taxable premiums, provides:

> Section 441. The taxes on premiums from insurers shall be upon all premiums, whether *upon business written or renewed,* which are received by any insurer or by any person acting as agent therefor, both upon *policies issued by agents in this state or policies issued at the office* of the insurers *upon application of subagents or others,* or for any individuals or association of individuals, not incorporated or authorized by the laws of this state, to effect insurance against fire, inland, marine, life, casualty, title, or other risks . . . . [Emphasis added.]

The Michigan premium tax here in question levies the privilege tax directly and solely on that

part of the foreign insurer's gross premiums which were generated from its insurance business in Michigan. The section imposing the tax explicitly refers to "insurance business in this state" and "business written in this state." Section 441 further qualifies the meaning of "premiums" within the statute to those received by the insurer "upon policies issued by agents in this state or policies issued at the office of the insurers upon application of subagents or others . . . ."

Recognizing that the terms "gross premiums" and "all premiums" must be construed within the context of each statutory section and the code as a whole, I am persuaded that the most reasonable construction is that the premium tax may be imposed on, and only on, *premiums received in connection with the business of writing or renewing insurance policies.* While the subject of the tax is the privilege of doing business within this state, its measurement is based upon the amount of gross premiums received from the carrying on of an insurance business—the amount of gross premiums received from persons who have bought policies in the regular course of business. The contributions of MONY's employees and field underwriters toward their employee benefit programs, therefore, should not be included in the tax base upon which the premium tax is levied.

II

As noted by the Court of Appeals, the courts of several other jurisdictions have addressed similar questions. The reported decisions construing similar tax provisions have uniformly concluded that insurance fringe benefits, such as the employee-

benefit plan of MONY, do not constitute the conduct of insurance business for premium tax purposes.[3]

The Court of Appeals appropriately focused on *Mutual Life Ins Co of New York v New York State Tax Comm*, 32 NY2d 348; 345 NYS2d 475; 298 NE2d 632 (1973). In that case, the New York court, applying that state's similar premium tax, held that such employee contributions were not taxable.[4] The court emphasized the employer-employee relationship involved:

> The relationship involved, then, is not commercial, nor one of seller and purchaser, with profit or contribution to surplus accruing to the former; rather, it is an incident of its employer-employee relationship, no different from that of any other employer not subject to the premium tax. Concededly, noninsurance company employers who provide insurance benefits for their employees similar to those provided by the petitioner are not subject to the taxing provision of section 187. Such employer-sponsored programs do not constitute the doing of an insurance business within the meaning of the statute, and we agree with the petitioner that what constitutes a nontaxable employer-employee relationship for noninsurers—rather than the doing of an insurance business—is not transformed into a taxable insurance business merely because the employer is licensed to conduct such a business. [32 NY2d 352.]

The California Court of Appeals arrived at the

---

[3] See *Danna v Comm'r of Ins*, 228 So 2d 708 (La App, 1969), *untimely app not considered* 255 La 283; 230 So 2d 588 (1970), *Williams v Massachusetts Mutual Life Ins Co*, 221 Tenn 508; 427 SW2d 845 (1968), *State Tax Comm v John Hancock Mutual Life Ins Co*, 341 Mass 555; 170 NE2d 711 (1960), *California-Western States Life Ins Co v State Bd of Equalization*, 151 Cal App 2d 559; 312 P2d 19 (1957), and other cases cited by the Court of Appeals, at 399, n 2, in its opinion in the instant case.

[4] At issue in the New York court's *Mutual Life* decision was the application of New York's similar premium tax to the same employee benefit plan of MONY at issue in the instant case.

same conclusion earlier in *California-Western States Life Ins Co v State Bd of Equalization,* 151 Cal App 2d 559; 312 P2d 19 (1957). California imposed an annual privilege tax on the basis of the amount of gross premiums received from "business done in California." The court held that "the retention . . . of a part of wages due participating employees were not premiums received . . . upon [the insurer's] business done" within the state for purposes of determining the base upon which the premium tax is to be levied. *Id.,* 561. See also *Metropolitan Life Ins Co v State Bd of Equalization,* 32 Cal 3d 649; 186 Cal Rptr 578; 652 P2d 426 (1982).

The Massachusetts Supreme Court, construing a similar tax provision, reached the same conclusion in *State Tax Comm v John Hancock Mutual Life Ins Co,* 341 Mass 555; 170 NE2d 711 (1960). Following the reasoning of the California Court of Appeals in *California-Western, supra,* the Massachusetts court noted the similarity of insurance contracts provided by employers pursuant to employee-benefit plans and commercial insurance contracts. Referring to the employee-benefit plan at issue, however, the court said

> [it was] not a product of the company's solicitation of the purchase of insurance policies by the general public. Instead, it is one aspect of the company's employer-employee relations, a method by which it assumes an expense to facilitate its business and compensates its employees for services in its usual insurance operations. [*Id.,* 563.]

The court, concluding that the employee-benefit plan was not within the tax measure, stated that "serious doubt exist[ed] whether the Legislature had any intention to classify the [benefit plan] for taxation with policies issued in [the ordinary]

course [of insurance business]," and articulated the well-established principle that tax statutes are to be strictly construed and that "all doubts are to be resolved in favor of the taxpayer." *Id.,* 565.

Both the Louisiana Court of Appeals and the Tennessee Supreme Court have reached the same conclusion, applying similar premium tax provisions. See *Danna v Comm'r of Ins,* 228 So 2d 708 (La App, 1969); *Williams v Massachusetts Mutual Life Ins Co,* 221 Tenn 508; 427 SW2d 845 (1968).

The reported decisions that have considered the status of contributory insurance programs maintained by insurance companies, similar in nature to the employee-benefit plan in the instant case, have held that such programs do not constitute, for premium tax purposes, a part of the insurance business carried on by the employer. I find the analyses of those decisions to be persuasive. Moreover, as noted by the Court of Appeals in the instant case, any ambiguity in the tax provisions here in question must be construed against the taxing authority. *Ecorse Screw Machine Products Co v Corporation & Securities Comm,* 378 Mich 415, 418; 145 NW2d 46 (1966); *Ready-Power Co v Dearborn,* 336 Mich 519, 525; 58 NW2d 904 (1953); *Consumers Power Co v Corporation & Securities Comm,* 326 Mich 643, 648; 40 NW2d 756 (1950); *Standard Oil Co v Michigan,* 283 Mich 85, 88; 276 NW 908 (1937).

### III

I agree with the majority that the premium tax is not a "gross-profits tax"; the tax is imposed as a condition precedent to the privilege of conducting an insurance business within this state, and it is measured by the amount of "gross premiums" received through the exercise of that privilege.

The purpose of the privilege tax is to exact payments from insurers doing business in Michigan, and the gross-premiums measure is designed to approximate the volume of business done in this state. In light of this purpose, I find it doubtful that the Legislature intended employee contributions toward their own participatory benefit plan, supplied on a nonprofit, nonactuarial basis, to be included in calculating the base upon which the premium tax is to be levied.

A contrary conclusion cannot be supported by finding no ambiguity in the premium tax provisions. Likewise, such a conclusion is not "buttressed" by the Legislature's enactment of MCL 500.3726; MSA 24.13726, which relates to the statutory purpose of facilitating the availability of health insurance for Michigan residents sixty-five years of age or older,[5] or by attempting to distinguish the Michigan premium tax provisions from those of other states.[6]

Therefore, I respectfully dissent. I would hold

[5] The purpose of Chapter 37 of the Insurance Code is "to provide a means of more adequately meeting the needs of persons who are 65 years of age or older . . . for [health] insurance coverage," and "to make possible the fullest extension of such coverage by encouraging insurance companies to combine their resources and experience and to exercise their collective efforts in the development and offering of policies of health insurance to all such applicants," and "to regulate the joint activities [therein] authorized in accordance with" 15 USC 1011-1015. MCL 500.3701; MSA 24.13701.

Accordingly, § 3726 states that, for purposes of taxation, "any association formed under this act shall be treated as a domestic corporation . . . ." MCL 500.3726; MSA 24.13726. "Association" is defined in § 3702 as "a voluntary unincorporated association formed for the purpose of enabling cooperative action to provide health insurance in accordance with this chapter in this or any other state having legislation enabling the issuance of insurance of the type authorized by this act." MCL 500.3702; MSA 24.13702.

The existence of § 3726 of Chapter 37 of the Insurance Code, which is specifically applicable to "associations" as defined in that act, is not relevant to the issue in the instant case: whether employee contributions toward their own participatory benefit plan constitute "premiums" within the meaning of § 440.

[6] The majority's attempt to distinguish the New York court's *Mu-*

that the contributions of MONY's employees and field underwriters are not to be included in the calculation of "gross premiums" subject to the premium tax. My disposition of this issue would make it unnecessary to decide whether ERISA would preempt the taxation if construed to apply to the costs of the employee-benefit program here in question.

CAVANAGH, J., concurred with RILEY, J.

ARCHER, J., took no part in the decision of this case.

---

*tual Life* decision by noting that the New York statute had been administratively interpreted as excluding the *cost of insurers'* employee-benefit programs is misplaced. Appellant has conceded, in the instant case, that MONY's "employer's contribution" is not subject to the tax. Only the "employees' contribution" is at issue, and the longstanding administrative interpretation referred to by the majority, which was reversed by the opinion of the New York Attorney General, related only to the employer cost. Appellee aptly makes this point in its brief.

Michigan's premium tax, applicable to foreign insurers doing business within this state is, in substance, indistinguishable from similar tax measures imposed by the several states. The substantial uniformity of state premium taxes, imposed as a privilege tax, is documented in the United States Supreme Court decision in *Western & Southern Life Ins Co v State Bd of Equalization of California,* 451 US 648; 101 S Ct 2070; 68 L Ed 2d 514 (1981), in which California's "retaliatory" tax provision was upheld against a constitutional challenge. Michigan has a similar "retaliatory" tax provision. See MCL 500.476; MSA 24.1476.